UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AL-HARETH AL-ALBUSTANI,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>SEAN B. ALGER, et al.,<br><br>　　　　　　　Defendants. | CASE NO. C22-5238JLR<br><br>ORDER |

## I.　INTRODUCTION

Before the court is a letter filed by *pro se* Defendant Sloan Bella in response to Plaintiff Al-Hareth Al-Albustani's ("Mr. Albustani") complaint, which the court construes as a special motion for expedited relief made pursuant to the Washington Uniform Public Expression Protection Act ("UPEPA"), RCW 4.105.010 *et seq.* (*See* Mot. (Dkt. # 12); Reply (Dkt. # 34).) Mr. Albustani opposes the motion. (Resp. (Dkt. # 32).) The court has considered the submissions of the parties, the relevant portions of

//

ORDER - 1

the record, and the applicable law.  Being fully advised,[1] the court GRANTS Ms. Bella's UPEPA motion in part and DENIES it in part.

## II.     BACKGROUND

Mr. Albustani's claims against Ms. Bella arise out of the allegedly "false and speculative statements" she and other Defendants made in the wake of Tracy Twyman's death by suicide on July 9, 2019.  (Compl. (Dkt. # 1) ¶¶ 34-35.)  Ms. Twyman was "an accomplished researcher, author and media personality in the genre of the occult" (*id.* ¶ 25), who had, "[i]n the several years leading up to her death, . . . showed symptoms of severe mental illness, including psychosis and schizophrenia, for which she was hospitalized approximately 6 week[s] prior to her passing" (*id.* ¶ 28).  During this period, Ms. Twyman allegedly "became involved in QAnon and other viral, pro-Trump conspiracy theories which led her to interact with people and groups she never would have interacted with when she was healthy." (*Id.*)

News that Ms. Twyman had died by suicide was met with speculation that she had, in fact, been murdered.  (*See id.* ¶ 34.)  That theory was "perpetuated" by Defendant Clyde Lewis on the July 18, 2019 episode of his "nationally syndicated radio show known as *Ground Zero*" (the "Ground Zero Show").  (*Id.*)  Mr. Lewis "featured" Ms.

//

---

[1] Only Mr. Albustani requests oral argument.  (*See* Resp.)  If a hearing is scheduled, Ms. Bella asks the court to allow her to participate "on Zoom or like options" so that she does not need to travel from California, where she resides.  (*See* Reply at 2.)  The court will decide on a case-by-case basis whether hearings will be held in-person or virtually, giving due consideration to the burdens associated with court-related travel.  However, the court need not make such a decision with respect to the instant motion because it concludes that oral argument is not necessary to dispose of this motion.  *See* Local Rules W.D. Wash LCR 7(b)(4).

Bella as a guest on that show, alongside Defendants Sean B. Alger and Kay Stone (also known as Ashlea Stinnett),[2] "in order to present 'proof' that Tracy Twyman was murdered." (Compl. ¶ 34.) The Ground Zero Show guests allegedly "made repeated false and speculative statements about the reasons for Ms. Twyman's death, insinuating that it was not a suicide but instead, a homicide." (*Id.* ¶ 35.) In particular, Ms. Bella "reported on her alleged psychic experience communicating with Ms. Twyman," in which Ms. Twyman purportedly told Ms. Bella:

> 1) that "it was not a suicide . . . she was actually tricked," 2) that it was a "kidnapping" involving "muscle relaxant", 3) that "there's no way that they actually think she killed herself the way that they found her because she couldn't have done that herself", 4) that "this was somebody that she knew", 5) that someone was "posing as a husband and wife", 6) that there was "one name" communicated to [Ms.] Bella and 7) that "this is a betrayal on a total level."

(*Id.*)

The allegedly "false and defamatory statements" aired on the Ground Zero Show encouraged others to spread the theory that Ms. Twyman had been murdered by Mr. Albustani across the internet, including through YouTube, Twitter, Facebook, Reddit, Change.org, and Quora.com. (*Id.* ¶¶ 37-39.) Some of those spreading this theory credited the Ground Zero Show discussion with having "broke the news [of Ms. Twyman's death]." (*Id.* ¶ 36 (alteration in original).) As a result of the online discussion generated by the Ground Zero Show, "[a]n internet search on Mr. Albustani's name in connection with Ms. Twyman's death generates multiple search results implicating him

//

---

[2] To date, only Ms. Bella has sought relief from Mr. Albustani's claims. (*See* Dkt.)

in her alleged 'murder.'" (*Id.* at 37.) The Ground Zero Show even prompted members of Ms. Twyman's family to question whether she had been murdered. (*Id.*)

On the basis of these allegations, Mr. Albustani filed a complaint on April 11, 2022, in which he raises claims against Ms. Bella for (1) direct copyright infringement in violation of sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106, 501 (*see id.* ¶¶ 51-60); (2) violating the Washington Personality Rights Act ("WPRA"), RCW 63.60.010 *et seq.* (*id.* ¶¶ 69-74); (3) invading his privacy by presenting his involvement in Ms. Twyman's death in a false light (*id.* ¶¶ 75-81); (4) intentionally inflicting emotional distress (*id.* ¶¶ 82-87); and (5) negligently inflicting emotional distress (*id.* ¶¶ 88-93).

### III.   ANALYSIS

In response to Mr. Albustani's complaint, Ms. Bella sent a one-page letter, which is dated July 6, 2022 and was received by the court on July 11, 2022. (Mot. at 1.) The court construed this submission as a motion to dismiss, and noted it for August 5, 2022. (*See id.* (requesting that she "be dismissed from this Civil Action"); *see also* Dkt.) Ms. Bella asks to be dismissed from this action because she "did nothing that is described in the [complaint]." (Mot. at 1.) Specifically, she argues that dismissal is warranted because she "had no knowledge of Ms. Twyman . . . being un alive when [she] called into the [Ground Zero Show]," and merely gave her "impressions-opinions," without mentioning Mr. Albustani by name, after the show producer told her of Ms. Twyman's passing and asked her to comment. (*Id.*) Ms. Bella thus asserts that Mr. Albustani's copyright claim does not apply to her as she was merely "expressing an opinion" in response to a question on the Ground Zero Show. (*Id.*) Ms. Bella additionally invokes

ORDER - 4

1  UPEPA, which is, as Ms. Bella describes it, Washington's "anti-SLAPP law."[3]  (*See*

2  Mot. at 1.)  In response, Mr. Albustani argues that Ms. Bella's motion should be denied

3  because:  (1) the complaint contains well-pled claims against Ms. Bella; or, alternatively,

4  (2) her motion challenges the factual assertions in the complaint which, under UPEPA,

5  requires the court to allow discovery and supplemental briefing applying a summary

6  judgment standard before ruling on Ms. Bella's motion.  (*See* Resp. at 12.)

7  The court begins its analysis by considering whether UPEPA applies and, if it

8  does, what standard of review is appropriate.  It then turns to consider Mr. Albustani's

9  claims against Ms. Bella under the applicable standard.

**A.    UPEPA**

UPEPA was enacted "to protect the exercise of the right of freedom of speech and of the press, the right to assemble and petition, and the right of association, guaranteed by the United States Constitution or the Washington state Constitution."  RCW 4.105.901.  It "provides that no later than sixty days after a party is served with a complaint that asserts a cause of action to which UPEPA applies, a party may file a special motion for expedited relief to dismiss the cause of action or part of the cause of action."  *Project Veritas v. Leland Stanford Junior Univ.*, No. C21-1326TSZ, 2022 WL 1555047, at *3 (W.D. Wash. May 17, 2022) (citing RCW 4.105.020(2)).  "[I]n ruling on such motion, the [c]ourt shall dismiss with prejudice a cause of action if:  (i) the moving party establishes that . . . UPEPA applies, (ii) the responding party fails to establish

---

[3] "SLAPP" stands for "strategic lawsuit against public participation."  *See City of Seattle v. Egan*, 317 P.3d 568, 569 (Wash. Ct. App. 2014).

that . . . UPEPA does not apply, and (iii) the moving party establishes that the responding party fails to state a cause of action upon which relief can be granted." *Id.* (citing RCW 4.105.060).  This third prong is met where:

> (1) the responding party fails to establish a prima facie case as to each essential element of the cause of action, (2) the moving party establishes that the responding party failed to state a cause of action upon which relief can be granted, or (3) the moving party establishes that no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law on the cause of action or part of the cause of action.

*Id.* at *3 n.2; *see* RCW 4.105.060.

Although UPEPA provides that the court should "consider the pleadings, the motion, any reply or response to the motion, and any evidence that could be considered in ruling on a motion for summary judgment," RCW 4.105.050, strict adherence to that procedure would cause a "stark collision" with the Federal Rules of Civil Procedure by permitting the court to consider a challenge to the facts alleged in a complaint without having first allowed the non-movant an opportunity for discovery.  *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834-35 (9th Cir.) (considering California's similar anti-SLAPP statute), *amended*, 897 F.3d 1224 (9th Cir. 2018).  To avoid this issue, the Ninth Circuit has counseled that, "when an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Id.* at 834.  But "when an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard will apply" and "discovery must be allowed, with opportunities to supplement evidence based

on the factual challenges, before any decision is made by the court." *Id.* (noting that "if there is a contest between a state procedural rule and the federal rules, the federal rules of procedure will prevail" (citing *Hanna v. Plumer*, 380 U.S. 460, 465 (1965))); *see Project Veritas*, 2022 WL 1555047, at *4 (construing UPEPA "in a manner that does not create a conflict" with the Federal Rules of Civil Procedure).

Ms. Bella asserts that she "did nothing that is described in the [complaint]" (Mot. at 1); that she neither mentioned Mr. Albustani by name nor "implicated him in any way" (Reply at 1); and that her comments on the Ground Zero Show are properly characterized as her opinion, for which she cannot be held liable (*see id.*). Thus, Ms. Bella appears to dispute the facts alleged in the complaint, and also challenges their legal sufficiency.

Although UPEPA instructs the court to consider Ms. Bella's factual challenge under a Rule 56 standard after the parties conduct discovery and submit additional briefing, *see Planned Parenthood*, 890 F.3d at 834, the court need not do so here. Ms. Bella's factual assertions are supported only by her motion and reply brief, which cannot support a finding in her favor under Rule 56. *See* Fed. R. Civ P. 56(c) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record."); *see also Smith v. Mack Trucks, Inc.*, 505 F.2d 1248, 1249 (9th Cir. 1974) ("Legal memoranda . . . , in the summary-judgment context, are not evidence."). Accordingly, the court applies only the Rule 12(b)(6) standard" to determine whether Mr. Albustani plausibly states a claim against Ms. Bella for the statements she allegedly made on the Ground Zero Show. *See Planned Parenthood*, 890 F.3d at 834.

1    Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when a complaint
2    "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).
3    Under this standard, the court construes the complaint in the light most favorable to the
4    nonmoving party, *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946
5    (9th Cir. 2005), and asks whether the complaint contains "sufficient factual matter,
6    accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*,
7    556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570
8    (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that
9    allows the court to draw the reasonable inference that the defendant is liable for the
10   misconduct alleged." *Id.*

11   **B.     Whether Mr. Albustani's Claims Survive Review Under Rule 12(b)(6)**

12   Ms. Bella seeks dismissal of each of the claims asserted against her (*see* Mot. at
13   1), which includes claims for (1) direct copyright infringement (Compl. ¶¶ 51-60);
14   (2) violating the WPRA (*id.* ¶¶ 69-74); (3) invading Mr. Albustani's privacy by
15   presenting him in a false light (*id.* ¶¶ 75-81); (4) intentionally inflicting emotional
16   distress (*id.* ¶¶ 82-87); and (5) negligently inflicting emotional distress (*id.* ¶¶ 88-93). In
17   her brief motion, Ms. Bella argues that she cannot be held liable for any of these claims
18   for merely giving her "intuitive opinion" on the Ground Zero Show. (*See* Mot. at 1.) The
19   court considers each of Mr. Albustani's claims in turn.

20           1.     Direct Copyright Infringement

21   Mr. Albustani's direct copyright infringement claim is pled against "All
22   Defendants and Does 1-10." (*See* Compl. ¶¶ 51-60 (italicization omitted).) However, he

clarifies in his response brief that he did not "intend to bring claims for copyright infringement against [Ms.] Bella." (*See* Resp. at 2.) Accordingly, the court considers this claim abandoned with respect to Ms. Bella and DISMISSES it with prejudice. *See Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1094 (9th Cir. 2011) (noting that claims abandoned are dismissed with prejudice).

2. WPRA

The WPRA establishes that "[e]very individual or personality has a property right in the use of his or her name, voice, signature, photograph, or likeness," which is "freely transferable, assignable, and licensable," and survives "the death of the individual or personality." RCW 63.60.010. An infringement under the WPRA occurs when:

> [a]ny person . . . uses or authorizes the use of a living or deceased individual's or personality's name, voice, signature, photograph, or likeness, on or in goods, merchandise, or products entered into commerce in this state, or for purposes of advertising products, merchandise, goods, or services, or for purposes of fund-raising or solicitation of donations, or if any person disseminates or publishes such advertisements in this state, without written or oral, express or implied consent of the owner of the right.

RCW 63.60.050. Conduct can infringe the WPRA regardless of "whether the use or activity is for profit or not for profit." *Id.*

Mr. Albustani argues that he states a claim under the WPRA through his allegations that Ms. Bella, "without the consent of Plaintiff, used Ms. Twyman's name or likeness for purposes of advertising her services in the State of Washington (and elsewhere) by virtue of her appearance as a guest psychic on a nationally syndicated radio show and by her reference to the subject of the show (Ms. Twyman) in coming to her psychic 'opinion.'" (Resp. at 8 (citing Compl. ¶¶ 34-35, 69-74).) However, in the

portion of the complaint describing Ms. Bella's conduct on the Ground Zero Show, Mr. Albustani does not actually allege that Ms. Bella appeared on the program for purposes of advertising her services as a psychic. (*See* Compl. ¶¶ 34-35 (noting that Ms. Bella is "a 'psychic'" and describing her account of the conversation she supposedly had with the deceased Ms. Twyman).) And while he does allege that the Defendants' collective "infringement of Ms. Twyman's personality rights is and was . . . for purposes of advertising products, merchandise, goods, or services in Washington" (*id.* ¶ 71), that merely parrots the statute, RCW 63.60.050, which is not enough to state a plausible claim, *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). It may be the case that Ms. Bella would derive some professional benefit from the publicity of recounting her "psychic experience" on a syndicated radio program, but Mr. Albustani has not alleged that she used Ms. Twyman's name for that purpose, as the WPRA requires. *See* RCW 63.60.050.

Even if Mr. Albustani had sufficiently alleged that Ms. Bella went on the Ground Zero Show to promote her business, his claim would still fail because the WPRA exempts the unauthorized use of a name "in connection with matters of cultural, historical, political, religious, educational, newsworthy, or public interest, including, without limitation, comment, criticism, satire, and parody." RCW 63.60.070(1). It also exempts unauthorized use of a name during a radio program "when the use does not inaccurately claim or state an endorsement by the individual or personality." RCW 63.60.070(2)(b).

1    Mr. Albustani alleges that Ms. Twyman's death was the matter of some cultural
2 and public interest—at least among those interested in the occult and familiar with Ms.
3 Twyman's work—and that Ms. Bella appeared on the Ground Zero Show to comment on
4 that topic.  (*See* Compl. ¶¶ 25-26, 34-39.)  And, while Ms. Bella relayed a conversation
5 she supposedly had with the deceased Ms. Twyman (*id.* ¶ 35), Mr. Albustani does not
6 allege that, in doing so, Ms. Bella claimed an endorsement from Ms. Twyman (*see*
7 *generally id.*).  Thus, the conduct Mr. Albustani describes is exempt from the WPRA.
8 *See* RCW 63.60.070(1), (2)(b); *see also Enter. Mgmt. Ltd., Inc. v. Construx Software*
9 *Builders, Inc.*, No. C19-1458DWC, 2020 WL 2795198, at *9 (W.D. Wash. May 29,
10 2020) (dismissing WPRA claim where plaintiffs failed to allege that defendants'
11 unauthorized use of a name in a YouTube video suggested an endorsement of the video);
12 *see also Haglund v. Sawant*, No. C17-1614MJP, 2018 WL 2216154, at *3 (W.D. Wash.
13 May 15, 2018) (dismissing WPRA claim because a political candidate's unauthorized use
14 of the plaintiff's name in a political advertisement could not "reasonably be understood to
15 claim or state [the plaintiff's endorsement]" where the use, as alleged, "evince[d]
16 unambiguous antipathy between [plaintiff] and politician"), *aff'd*, 781 F. App'x 586 (9th
17 Cir. 2019).
18    Accordingly, Mr. Albustani fails to allege facts sufficient to show that Ms. Bella
19 infringed rights protected by the WPRA, and that her alleged conduct is not exempt.  The
20 court thus GRANTS Ms. Bella's UEPA motion and DISMISSES Mr. Albustani's
21 WPRA claim against Ms. Bella.  Because Mr. Albustani may be able to allege facts
22 sufficient to cure the deficiencies identified above, his WPRA claim against Ms. Bella is

DISMISSED without prejudice and with leave to amend.  *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) ("'[A] district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" (quoting *Doe v. United States,* 58 F.3d 494, 497 (9th Cir. 1995))).[4]

### 3.   Invasion of Privacy by False Light

"A false light claim arises when a defendant (1) publicizes a matter that places another in a false light, (2) the false light would be highly offensive to a reasonable person, and (3) the defendant knew of or recklessly disregarded its falsity." *Pete v. Tacoma Sch. Dist. No. 10*, 198 F. Supp. 3d 1206, 1214 (W.D. Wash. 2016) (citing *Eastwood v. Cascade Broad. Co.*, 722 P.2d 1295, 1297 (Wash. 1986)).  Here, Mr. Albustani alleges that Ms. Bella appeared on a nationally syndicated radio program and offered untrue comments indicating that Ms. Twyman was murdered by her husband. (*See* Compl. ¶ 35.)  That is sufficient to meet elements one and two.  *See Pete*, 198 F. Supp. 3d at 1214.  Element three is met because, as alleged, Ms. Bella purported to repeat comments Ms. Twyman made when the two supposedly spoke more than a week after Ms. Twyman died by suicide. (*See* Compl. ¶ 35.)  Taking Mr. Albustani's allegations as true and drawing reasonable inferences therefrom, those allegations support the inference that Ms. Bella was fabricating her comments on the Ground Zero Show or, at the least, acting with reckless disregard for the truth or falsity of her words. *See LN Mgmt., LLC v.*

---

[4] UPEPA provides that "the court shall dismiss with prejudice" claims for which "[t]he responding party failed to state a cause of action upon which relief can be granted." *See* RCW 4.105.060.  However, because this action is in federal court, the court must apply the applicable federal procedural rules. *See Planned Parenthood*, 890 F.3d at 834.

*JPMorgan Chase Bank, N.A.*, 957 F.3d 943, 946 (9th Cir. 2020) (recognizing that the dead "tell no tales" (citing PIRATES OF THE CARIBBEAN: DEAD MEN TELL NO TALES (Walt Disney Pictures 2017)).

However, even if Mr. Albustani had not successfully alleged that Ms. Bella acted with actual malice—i.e., that she "either knew the expression was false or recklessly disregarded obvious warning signs that it contained falsities," *Harris v. City of Seattle*, 315 F. Supp. 2d 1105, 1110 (W.D. Wash. 2004), *aff'd*, 152 F. App'x 565 (9th Cir. 2005)—his claim could proceed because, as he argues, private figure plaintiffs need not allege actual malice to state a false light claim. (*See* Resp. at 9 (citing *Harris*, 315 F. Supp. 2d at 1109).[5]) Although there is a lack of authority directly addressing this question, courts in this district have noted that "the actual malice standard for false light claims is the same as that for defamation claims." *See Harris*, 315 F. Supp. 2d at 1109-10 (noting the lack of authority and declining to address the issue upon concluding that the plaintiff was a public figure). That comports with the Washington Supreme Court's assessment that there are only "theoretical differences between the two torts," pertaining to the nature of harm each is meant to redress. *See Eastwood*, 722 P.2d at 1297 (concluding that a defamation action compensates reputational damage, while a false light action compensates "injured feelings or mental suffering"). Moreover, "[i]t is well settled" under Washington law that private figures pleading defamation do not need to allege actual malice and "need show only negligence." *LaMon v. Butler*, 770 P.2d

---

[5] Ms. Bella does not argue that Mr. Albustani is a public figure (*see* Mot.; Reply), and the court finds no basis to infer from the complaint that he is (*see generally* Compl.).

1027, 1029 (Wash. 1989).  Thus, the court concludes that private figures, like Mr. Albustani, do not need to allege actual malice when pleading false light.  *See Eastwood*, 722 P.2d at 1297; *see also LaMon*, 770 P.2d at 1029.  Accordingly, the court concludes that Mr. Albustani has sufficiently pled a claim for false light against Ms. Bella based on her public comments suggesting he murdered his wife.

This conclusion does not change even if, as Ms. Bella contends, her comments on the Ground Zero Show are properly characterized as statements reflecting her opinions.  (*See* Mot. at 1.)  A statement presented as an opinion may, nevertheless, form the basis of a false light claim if it "falsely expresses or implies provable facts about the plaintiff."  *See Percival v. Poon*, No. C20-1040JCC, 2021 WL 3288132, at *5 (W.D. Wash. Aug. 2, 2021) (noting that an actionable falsehood for purposes of a false light claim can be "'a statement of either fact or opinion'" (quoting *Seaquist v. Caldier*, 438 P.3d 606, 616 (Wash. Ct. App. 2019))); *cf. Seaquist*, 438 P.3d at 612-13 ("[A] stated opinion may be actionable if it implies defamatory facts.").  Even if Ms. Bella's comments on the Ground Zero Show are properly characterized as an expression of her opinion, they plainly convey the allegedly false fact that Mr. Albustani murdered his wife.  (*See* Compl. ¶ 35.)  That suffices to state a plausible claim for false light under Washington law.

Accordingly, the court DENIES Ms. Bella's UPEPA motion with respect to Mr. Albustani's false light claim.

4. <u>Intentional Infliction of Emotional Distress</u>

"The elements of a claim for the tort of outrage or the intentional infliction of emotional distress are '(1) extreme and outrageous conduct, (2) intentional or reckless

infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress.'" *Reyes v. Yakima Health Dist.*, 419 P.3d 819, 825 (Wash. 2018) (quoting *Kloepfel v. Bokor*, 66 P.3d 630, 632 (Wash. 2003)).  Qualifying "conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  *Id.* (quoting *Grimsby v. Samson*, 530 P.2d 291, 295 (Wash. 1975)).  The conduct must be such that "the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim 'Outrageous!'"  *Kloepfel*, 66 P.3d at 632 (quoting *Reid v. Pierce Cnty.*, 961 P.2d 333, 337 (Wash. 1998)).  Thus, "the tort of outrage 'does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities'" because the law expects plaintiffs to "be hardened to a certain degree of rough language, unkindness and lack of consideration."  *Id.* (quoting *Grimsby*, 530 P.2d at 295).  Unlike with negligent infliction of emotional distress, "objective symptomatology is not required to establish intentional infliction of emotional distress."  *Id.* at 633.

Neither party cites any cases from which the court might analogize to determine whether Ms. Bella's statements on the Ground Zero Show are outrageous as a matter of law, or not.  (*See generally* Mot.; Resp.; Reply.)  The court's own review reveals that "what constitutes outrage is nebulous and difficult to define."  *See Spicer v. Patnode*, 443 P.3d 801, 807 n.4, 809 (Wash. Ct. App. 2019) (noting "inconsistent" cases regarding "what type of conduct is sufficiently egregious to constitute outrage").  The court need not determine precisely where the line between insult and outrageous conduct falls to

1 conclude that Ms. Bella's on-air suggestion that Mr. Albustani murdered his wife went

2 "beyond all possible bounds of decency." *Reyes*, 419 P.3d at 825. That is enough to

3 state a plausible claim for intentional infliction of emotional distress. *See Spicer*, 443

4 P.3d at 809-10; *see also Corey v. Pierce Cnty.*, 225 P.3d 367, 374 (Wash. Ct. App. 2010)

5 (finding evidence that defendant "had essentially publically [sic] accused [a county

6 prosecutor] of criminal behavior," including "mishandl[ing] public funds," supported

7 claim for outrage because a "longtime public servant" would find such charges to "be

8 particularly loathsome").

9 In her reply, Ms. Bella stresses the brevity and one-off nature of her "involvement

10 with Ms. Twyman's un alive circumstances." (*See* Reply at 1 (noting that she spoke for

11 "approximately 16 min[utes]" during the three-hour Ground Zero Show). Isolated

12 remarks have, in some cases, been found insufficient to support a claim for outrage. *See,*

13 *e.g.*, *Smith v. Gen Con LLC*, No. 82672-7, 2022 WL 2662003, at *5 (Wash. Ct. App. July

14 11, 2022) (concluding that conference organizer's isolated public statement concerning

15 decision to ban well-known attendee from event following allegations of spousal abuse

16 were not outrageous). However, Mr. Albustani alleges that Ms. Bella made her

17 comments on a nationally syndicated radio program, which extended the reach of her

18 remarks considerably. (*See* Compl. ¶¶ 34, 36, 37 (alleging that the theory advanced on

19 the Ground Zero Show was spread across the internet).)

20 Accordingly, the court DENIES Ms. Bella's UPEPA motion with respect to Mr.

21 Albustani's intentional infliction of emotional distress claim.

22 //

### 5.    Negligent Infliction of Emotional Distress

To establish a claim "[f]or negligent infliction of emotional distress, a plaintiff must prove he has suffered emotional distress by 'objective symptomatology,' and the 'emotional distress must be susceptible to medical diagnosis and proved through medical evidence.'" *Kloepfel*, 66 P.3d at 633 (quoting *Hegel v. McMahon*, 960 P.2d 424, 431 (Wash. 1998)). "The symptoms of emotional distress must also 'constitute a diagnosable emotional disorder.'" *Id.* (quoting *Hegel*, 960 P.2d at 431). Here, Mr. Albustani alleges that Ms. Bella breached her duty to act as a "reasonable, prudent person[]" through her comments on the Ground Zero Show, which caused Mr. Albustani to "suffer from humiliation, mental anguish, and emotional and physical distress," including symptoms of Post Traumatic Stress Disorder ("PTSD"). (*See* Compl. ¶ 91; *see also id.* ¶ 44 (alleging that he has experienced a recurrence of PTSD symptoms).) PTSD has been specifically recognized as an "example[] of emotional distress" sufficient to state a claim for negligent infliction of emotional distress. *See, e.g.*, *Hegel*, 960 P.2d at 431 n.5; *Berry v. Fleury*, No. 48571-7-I, 2002 WL 1011541, at *4 (Wash. Ct. App. May 20, 2002) ("Examples of emotional distress would include neuroses, psychoses, chronic depression, phobia, shock, post traumatic stress disorder, or any other disabling mental condition.").

Accordingly, the court DENIES Ms. Bella's UPEPA motion with respect to Mr. Albustani's negligent infliction of emotional distress claim.

### IV.    CONCLUSION

For the foregoing reasons, Ms. Bella's UPEPA motion (Dkt. # 12) is GRANTED in part and DENIED in part. Mr. Albustani's direct copyright infringement claim against

Ms. Bella is DISMISSED with prejudice, and his WPRA claim against Ms. Bella is DISMISSED without prejudice and with leave to amend. If Mr. Albustani wishes to amend his WPRA claim, he must submit an amended complaint by August 30, 2022.

Dated this 9th day of August, 2022.

JAMES L. ROBART
United States District Judge

ORDER - 18