UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AL-HARETH AL-BUSTANI, | CASE NO. C22-5238JLR |
| Plaintiff, | ORDER |
| v. | |
| SEAN B ALGER, et al., | |
| Defendants. | |

## I.   INTRODUCTION

Before the court is *pro se* Defendant Sloan Bella's second motion to dismiss

Plaintiff Al-Hareth Al-Bustani's claims against her.  (Mot. (Dkt. # 45).[1])  Mr. Al-Bustani

---

[1]Ms. Bella filed her reply on October 31, 2022, 10 days after the noting date for her motion.  (*See* Reply (Dkt. # 55) at 1); *see also* Local Rules W.D. Wash. LCR 7(d)(3) (providing that "any reply papers shall be filed and served no later than the noting date").   Ms. Bella did not file a motion for relief from the deadline.  (*See* Dkt.)  Because the noting date is the deadline by "which all briefing is complete and the matter is ready for the court's consideration," Local Rules W.D. Wash. LCR 7(b)(1), the court will not consider Ms. Bella's late reply.  The court reminds Ms. Bella that although she proceeds *pro se*, the Local Rules are not optional and she must comply with them.

1    opposes the motion.  (Resp. (Dkt. # 52).)  The court has reviewed the parties'

2    submissions, the balance of the record, and applicable law.  Being fully advised,[2] the

3    court GRANTS Ms. Bella's motion.

## II.    BACKGOUND

5         Mr. Al-Bustani's claims against Ms. Bella arise out of the allegedly "false and

6    speculative statements" she and other Defendants made in the wake of the death by

7    suicide of Mr. Al-Bustani's wife, Tracy Twyman.[3]  (Am. Compl. (Dkt. # 44) ¶ 35.)  Ms.

8    Twyman was "an accomplished researcher, author and media personality in the genre of

9    the occult."  (*Id*. ¶ 24.)  News of Ms. Twyman's death by suicide was met with

10   speculation that she had instead been murdered.  (*Id*. ¶¶ 28, 34.)  Ms. Bella, who works as

11   a psychic, appeared as a guest on an episode of Defendant Clyde Lewis's radio show,

12   "Ground Zero" (the "Ground Zero Show"), to discuss the circumstances surrounding Ms.

13   Twyman's death.  (*Id*. ¶¶ 34-36.)  In the episode of the Ground Zero Show, Ms. Bella

14   "reported on her alleged psychic experience communicating with Ms. Twyman," in

15   which Ms. Twyman purportedly told Ms. Bella:

16        that "it was not a suicide . . . she was actually tricked," 2) that it was a
          "kidnapping" involving "muscle relaxant", 3) that "there's no way that they
17        actually think she killed herself the way that they found her because she
          couldn't have done that herself," 4) that "this was somebody that she knew",
18        5) that someone was "posing as a husband and wife", 6) that there was "one

19        [2] Neither party requests oral argument (*see* Mot. at 1; Resp. at 1) and the court does not
20   find oral argument necessary to dispose of this motion, *see* Local Rules W.D. Washington LCR
     7(b)(4).

21        [3] The court described much of the factual background in its August 9, 2022 order
     granting in part and denying in part Ms. Bella's first motion for expedited relief and to dismiss
22   Mr. Al-Bustani's claims against her.  (*See* 8/9/22 Order (Dkt. # 35) at 2-4.)  Accordingly, the
     court describes here only those facts relevant to the instant motion.

name" communicated to [Ms.] Bella and 7) that "this is a betrayal on a total level."

(*Id.* ¶ 36.) Mr. Al-Bustani alleges, in relevant part, that these comments and statements by other Defendants on the Ground Zero Show were "false and defamatory" and unleashed rampant speculation on the Internet about the circumstances surrounding Ms. Twyman's death. (*See id.* ¶¶ 40-41, 49.)

On the basis of these allegations, Mr. Al-Bustani filed a complaint in April 2022, raising claims against Ms. Bella for invasion of privacy by false light, intentional and negligent infliction of emotional distress, and violation of the Washington Personality Rights Act ("WPRA"). (*See id.* ¶¶ 74-98.) In response, Ms. Bella sent a one-page letter, which the court construed as a motion to dismiss all of Mr. Al-Bustani's claims against her. (*See* 1st MTD (Dkt. # 12); *see also* 8/9/22 Order at 4.) The court denied Ms. Bella's motion with respect to Mr. Al-Bustani's claims for invasion of privacy and both intentional and negligent infliction of emotional distress. (*See* 8/9/22 Order at 17-18.) The court granted Ms. Bella's motion with respect to Mr. Al-Bustani's WPRA claim without prejudice and with leave to amend his complaint to cure the deficiencies identified in the order. (*Id.* at 18.) [4] Mr. Al-Bustani timely filed an amended complaint. (*See* Am. Compl.)

---

[4] Mr. Al-Bustani originally also included a claim for direct copyright infringement against Ms. Bella. (*See* Compl. ¶¶ 51-60.) However, in his amended complaint, Mr. Al-Bustani abandons his claim against Ms. Bella for direct copyright infringement. (*See* Am. Compl. ¶¶ 56-65; Resp. at 2.)

1    Thereafter, Ms. Bella filed the instant motion, again seeking dismissal of all

2    claims against her.  (*See* Mot. at 1.)

3                                    **III.    ANALYSIS**

4           The court reviews the legal standard for a motion to dismiss before turning to Ms.

5    Bella's motion.  Although Ms. Bella states that she seeks dismissal of all of Mr.

6    Al-Bustani's claims against her, the arguments in her motion, construed liberally, appear

7    to be directed solely at Mr. Al-Bustani's WPRA claim.  (*See generally* Mot.)  Therefore,

8    the court DENIES her motion with respect to Mr. Al-Bustani's claims for false light

9    invasion of privacy, intentional infliction of emotional distress, and negligent infliction of

10   emotional distress, and considers only the WPRA claim below.

11   **A.    Legal Standard for a Motion to Dismiss**

12          Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when a complaint

13   "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

14   Under this standard, the court asks whether the complaint contains "sufficient factual

15   matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

16   *v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

17   570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content

18   that allows the court to draw the reasonable inference that the defendant is liable for the

19   misconduct alleged."  *Id*. at 678.  While "detailed factual allegations" are not required, a

20   [pleading] must include "more than an unadorned, the-defendant-unlawfully-harmed-me

21   accusation."  *Id.*  Although the court construes the complaint in the light most favorable

22   to the nonmoving party, *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d

1   940, 946 (9th Cir. 2005), the court need not accept as true legal conclusions or "formulaic

2   recitation[s] of the legal elements of a cause of action," *Chavez v. United States*, 683 F.3d

3   1102, 1008 (9th Cir. 2012).  Because Ms. Bella proceeds *pro se*, the court must construe

4   her pleadings liberally.  *See McGuckin v. Smith*, 974 F.2d 1050, 1055 (9th Cir. 1992).

5   **B.     The Washington Personality Rights Act**

6           The WPRA establishes that "[e]very individual or personality has a property right

7   in the use of his or her name, voice, signature, photograph, or likeness," which is "freely

8   transferable, assignable, and licensable," and survives "the death of the individual or

9   personality."  RCW 63.60.010.  An infringement under the WPRA occurs when:

10              [a]ny person . . . uses or authorizes the use of a living or deceased
                individual's or personality's name, voice, signature, photograph, or likeness,
11              on or in goods, merchandise, or products entered into commerce in this state,
                or for purposes of advertising products, merchandise, goods, or services, or
12              for purposes of fund-raising or solicitation of donations, or if any person
                disseminates or publishes such advertisements in this state, without written
13              or oral, express or implied consent of the owner of the right.

14   RCW 63.60.050.  Conduct can infringe the WPRA regardless of "whether the use or

15   activity is for profit or not for profit."  *Id*.  However, the WPRA exempts the

16   unauthorized use of a name "in connection with matters of cultural, historical, political,

17   religious, educational, newsworthy, or public interest, including, without limitation,

18   comment, criticism, satire, and parody."  RCW 63.60.070(1).  The statute also exempts

19   unauthorized use of a name during a radio program "when the use does not inaccurately

20   claim or state an endorsement by the individual or personality."  RCW 63.60.070(2)(b).

21           On August 9, 2022, the court dismissed Mr. Al-Bustani's WPRA claim against

22   Ms. Bella without prejudice, finding the following faults with Mr. Al-Bustani's

1    complaint:  (1) Mr. Al-Bustani failed to allege that Ms. Bella appeared on the program

2    for purposes of advertising her services as a psychic; (2) Mr. Al-Bustani acknowledged

3    that Ms. Twyman's death was a "matter of some cultural and public interest"; and (3) Mr.

4    Al-Bustani failed to allege that Ms. Bella inaccurately claimed an endorsement from Ms.

5    Twyman in her appearance on the Ground Zero Show.  (*See* 8/09/22 Order at 10-11.)

6    Mr. Al-Bustani added the following factual allegations about Ms. Bella's appearance on

7    the Ground Zero Show in his Amended Complaint to cure the deficiencies:

8           Upon information and belief, the Ground Zero [S]how parties made these
            statements in order to inaccurately claim an endorsement by Ms. Twyman or
9           her estate.  In other words, by freely speculating about the death of Ms.
            Twyman, the Ground Zero [S]how parties falsely claimed an endorsement
10          by Ms. Twyman or her estate (i.e., Mr. Al-Bustani) in order to promote each
            of their respective businesses and further increase their audience, followers
11          and clientele.  As [Defendant Clyde] Lewis knew from speaking with Mr.
            Al-Bustani shortly after his wife's death, the matter discussed on the show
12          was a matter of private interest (something Al-Bustani had asked Lewis not
            to discuss) and does not constitute comment on a matter of public
13          interest . . . .

14   (Am. Compl. ¶ 37; *see also* Resp. at 6 (repeating these allegations).)

15          Ms. Bella again urges the court to dismiss Mr. Al-Bustani's WPRA claim against

16   her because Ms. Twyman was a public figure, and her death was a matter of public

17   concern.  (*See* Mot. at 1-2.)  As the court has already recognized, Mr. Al-Bustani, too,

18   alleges that Ms. Twyman's death was the matter of some cultural and public interest—at

19   least among those interested in the occult and familiar with Ms. Twyman's work—and

20   that Ms. Bella appeared on the Ground Zero Show to comment on that topic.  (*See* Am.

21   Compl. ¶¶ 24-25 (describing Ms. Twyman as "an accomplished researcher, author and

22   media personality," and noting that she "made a name for herself" before publishing her

1    own books and detailing her media appearances, including in multiple National

2    Geographic documentaries); *see also* 8/9/22 Order at 11.)  Mr. Al-Bustani's conclusory

3    statement that Ms. Twyman's death "was a matter of private interest" merely because Mr.

4    Al-Bustani had asked Mr. Lewis not to discuss it does not undermine his other

5    acknowledgements that Ms. Twyman was a public figure and that her death is a matter of

6    public concern.  (*See* Am. Compl. ¶ 37.)  In his response to Ms. Bella's motion, Mr.

7    Al-Bustani repeats his assertion that her death was a private matter but fails to identify

8    any legal authority for the position that a party may unilaterally designate a topic as a

9    "matter of private interest" and thereby evade the public interest exemption to the

10   WPRA.  (*See* Resp. at 6.)  After conducting its own research, the court is unable to

11   identify any such authority, either.  Accordingly, the court again concludes that Ms.

12   Bella's comments on the Ground Zero Show are exempt from liability under the WPRA

13   as comments on a matter of public concern.  *See* RCW 63.60.070(1).

14       Even if Ms. Twyman's death were not a matter of public concern, Mr.

15   Al-Bustani's WPRA claim against Ms. Bella would still fail because he does not

16   plausibly allege that Ms. Bella inaccurately claimed an endorsement by Ms. Twyman or

17   her estate.  *See* RCW 63.60.070(2)(b).  Mr. Al-Bustani amended his complaint to assert

18   that "the Ground Zero [S]how parties made these statements in order to inaccurately

19   claim an endorsement by Ms. Twyman or her estate," and that "by freely speculating

20   about the death of Ms. Twyman, the Ground Zero [S]how parties falsely claimed an

21   endorsement by Ms. Twyman or her estate."  (Am. Compl. ¶ 37.)  These statements

22   merely assert a legal conclusion without factual support.  Therefore, the court need not

1    accept these statements as true in evaluating Ms. Bella's motion to dismiss.  *See Chavez*,

2    683 F.3d at 1008 (holding that the court need not accept legal conclusions or formulaic

3    recitations of the elements of a legal claim as true).  Mr. Al-Bustani does not identify any

4    facts that would allow the court to reasonably infer that Ms. Bella is liable under the

5    WPRA, *see Iqbal*, 556 U.S. at 678, or point to any legal authority that a party claims an

6    endorsement by a person by "freely speculating" about that person (*see* Resp.).

7    Accordingly, Mr. Al-Bustani's WPRA claim against Ms. Bella also fails because Mr.

8    Al-Bustani does not plausibly allege that Ms. Bella inaccurately claimed an endorsement

9    by Ms. Twyman or her estate.  Therefore, the court DISMISSES Mr. Al-Bustani's

10   WPRA claim against Ms. Bella.

11   **C.    Leave to Amend**

12          A district court should generally grant leave to amend, "unless it determines that

13   the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*,

14   203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. U.S.*, 58 F.3d 494, 497 (9th Cir.

15   1995)).  The court has especially broad discretion to grant or deny leave to amend where

16   the plaintiff has already filed an amended complaint.  *Sisseton-Wahpeton Sioux Tribe v.*

17   *United States*, 90 F.3d 351, 355 (9th Cir. 1996).  Here, Mr. Al-Bustani already had an

18   opportunity to cure the deficiencies in his WPRA claim (*see* 8/9/22 Order at 11-12), but

19   still fails to state a plausible claim for relief in his amended complaint or identify any new

20   facts or legal theories that he could not have incorporated into prior iterations of his

21   complaint (*see* Resp. (repeating, word for word, the allegations in his Amended

22   Complaint)).  *See, e.g.*, *Turner v. Cnty. of Los Angeles*, 18 F. App'x 592, 597 (9th Cir.

2001) (concluding that the court did not abuse its discretion in dismissing the second

amended complaint with prejudice and without leave to amend where the court had

already allowed the plaintiff to amend the complaint with instructions on how to cure the

complaint's deficiencies); *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1052 (9th Cir.

2008) ("Appellants fail to state what additional facts they would plead if given leave to

amend . . . . Accordingly, amendment would be futile.").  Therefore, the court concludes

that further amendment to Mr. Al-Bustani's WPRA claim against Ms. Bella would be

futile.  The court DISMISSES this claim with prejudice and without leave to amend.

## IV.    CONCLUSION

For the foregoing reasons, the court GRANTS Ms. Bella's motion to dismiss (Dkt.

# 45) Mr. Al-Bustani's WPRA claim against her with prejudice and without leave to

amend.  The court DENIES the motion with respect to Mr. Al-Bustani's remaining

claims against Ms. Bella for invasion of privacy, negligent infliction of emotional

distress, and intentional infliction of emotional distress. .

Dated this 21st day of November, 2022.

JAMES L. ROBART
United States District Judge