UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AL-HARETH AL-BUSTANI,

           Plaintiff,

   v.

SEAN B. ALGER, et al.,

           Defendants.

CASE NO. C22-5238JLR

ORDER

## I.    INTRODUCTION

Before the court are Defendant Gen Media Partners LLC's ("Gen Media") motion to dismiss for failure to state a claim (MTD (Dkt. # 79); MTD Reply (Dkt. # 86)), and Plaintiff Al-Hareth Al-Bustani's second motion to amend his complaint (2d MTA (Dkt. # 84); 2d MTA Reply (Dkt. # 88)).  Mr. Al-Bustani opposes Gen Media's motion to dismiss.  (MTD Resp. (Dkt. # 83).)  Gen Media filed a response to, but does not oppose, Mr. Al-Bustani's second motion to amend his complaint.  (*See* 2d MTA Resp. (Dkt. # 87).)  No other Defendant opposes Mr. Al-Bustani's second motion to amend his

1   complaint.  (*See* Dkt.)  The court has reviewed the parties' submissions, the relevant

2   portions of the record, and applicable law.  Being fully advised,[1] the court GRANTS in

3   part Gen Media's motion to dismiss and DENIES as moot Mr. Al-Bustani's second

4   motion to amend his complaint.

5                            **II.    BACKGROUND**

6          Mr. Al-Bustani's claims against Gen Media arise from a July 18, 2019 radio

7   broadcast of the nationally syndicated program, *Ground Zero* (the "Ground Zero Show").

8   (Am. Compl. (Dkt. # 44) ¶¶ 34-37.[2])  Mr. Al-Bustani alleges that Gen Media is the parent

9   company to the entity that broadcast the Ground Zero Show and that Gen Media therefore

10  "produced and syndicated" the show.  (*Id.* ¶ 38.)  Gen Media "denies that it ever 'owned'

11  or 'produced' the Ground Zero Show."  (MTD at 3 n.1.)

12         Mr. Al-Bustani alleges that the Ground Zero Show host, Defendant Louis Clyde

13  Holder,[3] and several guests (the "Ground Zero Show parties") discussed the

14  circumstances surrounding the death of Mr. Al-Bustani's late wife, Tracy Twyman,

15  during the July 18, 2019 broadcast.  (Am. Compl. ¶ 34.)  Ms. Twyman died by suicide

16  several days before that broadcast.  (*Id.*)  Mr. Al-Bustani alleges that the Ground Zero

17

18         [1] Although Gen Media requests oral argument (*see* Mot. at 1), the court has determined
    that oral argument would not be helpful to its disposition of the motions, *see* Local Rules W.D.
19  Wash. LCR 7(b)(4).

20         [2] The court detailed the factual background of this case in its August 9, 2022 order and
    does not repeat that background here.  (*See* 8/9/22 Order (Dkt. # 35).)  Instead, the court
21  discusses only the factual and procedural background relevant to the instant motions.

22         [3] Mr. Al-Bustani repeatedly refers to Defendant Louis Clyde Holder by his alias, Clyde
    Lewis.  (*See* Am. Compl.; Dkt.)

Show parties "made repeated false and speculative statements" about Ms. Twyman's death, "insinuating that it was . . . a homicide." (*Id.* ¶ 35.) The Ground Zero Show parties then discussed Ms. Twyman's body of work, and Mr. Holder suggested that "there needs to be a concerted effort by a group of people to. . . make sure that her body of work is restored or . . . taken care of" in her absence. (MTD at 10-11; *id.*, Ex. A ("Partial Transcript") at 5[4]; *see also* Am. Compl. ¶ 35.) The Ground Zero Show parties discussed a communication that self-proclaimed psychic, Defendant Sloan Bella, stated she had with Ms. Twyman from beyond the grave. (*See* Partial Transcript at 11; Am. Compl. ¶ 36.) Ms. Bella stated that the deceased Ms. Twyman described her death as the result of "kidnapping" by "somebody that she knew" who was "posing as a husband and wife." (Partial Transcript at 11-12.)

Mr. Al-Bustani further alleges that, "[s]ince the date of the Ground Zero Show, the internet has been replete with the false and defamatory statements and innuendos [discussed on the Ground Zero Show] that Mr. Al-Bustani was involved in the alleged 'murder' of his late wife." (Am. Compl. ¶ 40.) Mr. Al-Bustani cites a June 2021 article from the website Quora.com as one such false statement and describes it as "a direct and proximate result of the Ground Zero Show." (*Id.* ¶ 41; *see also* MTD at 11, Ex. B ("Quora Article").[5]) Mr. Al-Bustani asserts that the Quora Article "makes false

---

[4] For the reasons articulated below, the court incorporates by reference the Partial Transcript of the Ground Zero Show. (*See infra* § III.B.) The court uses the page numbers in the CM/ECF header when citing to the motions and the parties' exhibits unless otherwise indicated.

[5] The court incorporates the Quora Article by reference. (*See infra* § III.B.)

1   statements and innuendos about Mr. Al-Bustani, implying that he and Ms. Twyman were

2   'estranged' at the time of her death and that Mr. Al-Bustani was involved in her murder

3   and would get his 'just des[s]erts.'" (Am. Compl. ¶ 41; *see also* Quora Article at 4

4   (stating Ms. Twyman's "estranged husband" is on a "'crusade' to remove all of [her]

5   work from the Internet").)

6          Mr. Al-Bustani filed the instant action on April 11, 2022 and named as a defendant

7   Alpha Media LLC ("Alpha Media"), which he believed was responsible for producing

8   the Ground Zero Show.  (*See generally* Compl. (Dkt. # 1); Dkt.; 1st MTA (Dkt. # 38)

9   ¶ 4.)  Mr. Al-Bustani then learned that Alpha Media had transferred production and

10  syndication of the Ground Zero Show to a subsidiary of Gen Media shortly before the

11  July 18, 2019 broadcast.  (Am. Compl. ¶ 38.)  Mr. Al-Bustani voluntarily dismissed

12  Alpha Media on June 14, 2022 and filed an amended complaint naming Gen Media as a

13  defendant on September 22, 2022.  (*See id*.; Dkt.)  Mr. Al-Bustani's amended complaint

14  asserted the following claims against Gen Media:  (1) vicarious copyright infringement;

15  (2) violation of the Washington Personality Rights Act ("WPRA"); (3) false light

16  invasion of privacy ("false light"); (4) intentional infliction of emotional outrage

17  ("outrage"); and (5) negligent infliction of emotional distress ("NIED").  (*See* Am.

18  Compl. ¶¶ 66-98.)  Mr. Al-Bustani served Gen Media with the amended complaint on

19  October 27, 2022.  (*See* Aff. (Dkt. # 56).)  Gen Media now seeks dismissal of each of Mr.

20  Al-Bustani's claims against it.  (*See generally* MTD.)  After Gen Media filed its motion

21  to dismiss, Mr. Al-Bustani filed a second motion to amend his complaint, seeking to add

22

1  allegations in support of a claim for direct copyright infringement against Mr. Holder.

2  (*See* 2d MTA at 13, 17.)

3  ### III.    ANALYSIS

4  The court first reviews the legal standard for a motion to dismiss before turning to

5  Gen Media's motion.  The court then addresses Mr. Al-Bustani's second motion to

6  amend his complaint.

7  **A.    Legal Standard for a Motion to Dismiss**

8  Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when a complaint

9  "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

10  Under this standard, the court construes the complaint in the light most favorable to the

11  nonmoving party, *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946

12  (9th Cir. 2005), and asks whether the complaint contains "sufficient factual matter,

13  accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*,

14  556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

15  (2007)).  The court is not, however, required to accept as true legal conclusions or

16  "formulaic recitation[s] of the legal elements of a cause of action," *Chavez v. United*

17  *States*, 683 F.3d 1102, 1008 (9th Cir. 2012), or "allegations that are merely conclusory,

18  unwarranted deductions of fact," *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998

19  (9th Cir. 2010).  "A claim has facial plausibility when the plaintiff pleads factual content

20  that allows the court to draw the reasonable inference that the defendant is liable for the

21  misconduct alleged." *Iqbal*, 556 U.S. at 678.

22

**B.      Incorporation by Reference**

In its motion to dismiss, Gen Media urges the court to consider, under the doctrine of incorporation by reference, a document that Gen Media states is a transcript of an excerpt of the July 18, 2019 broadcast of the Ground Zero Show (*see* MTD at 10; Partial Transcript), and the Quora.com article Mr. Al-Bustani alleges was inspired by the Ground Zero Show (*id*. at 11; Quora Article; *see also* Am. Compl. ¶ 41 (describing the Quora Article as "a direct and proximate result of the Ground Zero Show")).  Mr. Al-Bustani opposes Gen Media's request to incorporate the Partial Transcript by reference but does not address its request with respect to the Quora Article.  (*See* MTD Resp. at 3-5.)

The court must typically limit its analysis to the complaint when deciding a motion to dismiss, but may incorporate by reference certain materials that "form[] the basis of the plaintiff's claim," without converting the 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment.  *U.S. v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).  The incorporation by reference doctrine is intended to "prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are based."  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998)).  The court may incorporate by reference materials "on which the complaint necessarily relies if:  (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity" of the document.  *Daniels-Hall*, 629 F.3d at 998 (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cr. 2006)).

1    If the non-moving party disputes the authenticity of the document, "the court must

2    accept [his] representation that there is a dispute." *Gerritsen v. Warner Bros. Ent. Inc.*,

3    112 F. Supp. 3d 1011, 1027 & n.77 (C.D. Cal. 2015).  However, like any other claim the

4    non-moving party makes at this stage, his dispute of authenticity must have "facial

5    plausibility." *Casa Nido P'ship v. Kwon*, No. 20-CV-07923EMC, 2021 WL 5053084, at

6    *3 (N.D. Cal. Nov. 1, 2021) (declining to incorporate material by reference because the

7    operative complaint did not rely on it and the plaintiff plausibly disputed its authenticity).

8    In particular, the court need not accept a party's concerns regarding the authenticity of

9    the document where doing so would frustrate the purpose of the incorporation by

10   reference doctrine.  *See Gerritsen*, 112 F. Supp. 3d at 1025 (accepting plaintiff's

11   authenticity concerns because there was no evidence that she was attempting to "survive

12   a motion to dismiss 'by deliberately omitting documents upon which [her] claims are

13   based'" (quoting *Swartz*, 476 F.3d at 763)).

14       The court agrees with the parties that the Quora Article meets the requirements of

15   the incorporation by reference doctrine.  (*See* MTD at 11; *see generally* MTD Resp.)  The

16   court incorporates the Quora Article by reference.

17       Gen Media argues that because Mr. Al-Bustani's amended complaint and each of

18   his claims against Gen Media rely extensively on statements made on the Ground Zero

19   Show, the court should incorporate the Partial Transcript by reference.  (MTD at 11.)  In

20   opposition, Mr. Al-Bustani asserts that he disputes the authenticity of the Partial

21   Transcript because it is incomplete and lacks "assurances that the audio file found on the

22   internet is a complete, accurate, unedited record of the broadcast."  (MTD Resp. at 4.)

ORDER - 7

1    Gen Media replies that Mr. Al-Bustani's authenticity concerns are not reasonable,

2    particularly because the document is a transcription of the audio file whose web address

3    Mr. Al-Bustani provided to Gen Media.  (*See* MTD Reply at 2-3; MTD at 10 n.2; *see also*

4    MTD Resp. at 4 (admitting that Mr. Al-Bustani "informed Gen Media of the location" of

5    the Ground Zero Show recording).)  Gen Media also asserts that the Partial Transcript is

6    the most complete copy available, includes the statements quoted in the amended

7    complaint, and contains indicators that it was scanned and uploaded one day after the

8    broadcast, by the same radio station that hosted the Ground Zero Show at the time.

9    (MTD Reply at 3-4.)

10           The court agrees with Gen Media that (1) Mr. Al-Bustani's complaint repeatedly

11   refers to and quotes directly from the content of the Partial Transcript and (2) the content

12   of the Ground Zero Show is central to each of his claims.  (*See generally* Am. Compl.)

13   Indeed, every single one of Mr. Al-Bustani's claims against Gen Media derives from

14   statements made on the July 18, 2019 airing of the Ground Zero Show.  (*See* Am. Compl.

15   ¶¶ 34-37, 40-41.)  Although Mr. Al-Bustani states that he disputes the authenticity of the

16   transcript, the court concludes that his concerns are not facially plausible but are instead

17   an attempt to survive Gen Media's motion by deliberately excluding the Partial

18   Transcript.  *See Casa Nido*, 2021 WL 5053084, at *3; *Daniels-Hall*, 629 F.3d at 998

19   (providing that the court need not accept as true "allegations that are merely conclusory,

20   unwarranted deductions of fact").  Mr. Al-Bustani's stated concerns are conclusory and

21   generalized; he does not identify specific facts in support of his conclusion that the Partial

22   Transcript is inauthentic, and he admits that he provided Gen Media with the very link to

the audio file on which the Partial Transcript is based.  (*Compare* MTD Resp. at 4

(stating only that the Partial Transcript "may not be an accurate transcription")), *with*

*Casa Nido*, 2021 WL 5053084, at *3 (finding plaintiff's authenticity dispute plausible

where she alleged the documents at issue were taken out of context from other relevant

documents).

Here, Mr. Al-Bustani's conclusory "dispute" regarding the authenticity of the

Partial Transcript is not facially plausible; declining to incorporate the document by

reference on that basis would frustrate the doctrine's purpose.  *See Swartz*, 476 F.3d at

763 (explaining that the incorporation by reference doctrine is intended to prevent the

plaintiff from surviving a motion to dismiss by deliberately omitting documents on which

his complaint relies); *see also Gerritsen*, 112 F. Supp. 3d at 1025 (accepting plaintiff's

authenticity concerns because there was no risk that doing so would frustrate the purpose

of the doctrine).  Accordingly, the court incorporates by reference the Partial Transcript.

## C.   Whether Mr. Al-Bustani's Claims are Time-Barred

Gen Media argues that each of Mr. Al-Bustani's claims against it are time-barred.

(*See* MTD at 11-14.)  "A statute-of-limitations defense, if 'apparent from the face of the

complaint,' may properly be raised in a motion to dismiss."  *Seven Arts Filmed Ent. Ltd.*

*v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting *Conerly v.*

*Westinghouse Elec. Corp.*, 623 F.2d 117, 119 (9th Cir. 1980)).  The limitations period on

a legal claim begins to run when the cause of action accrues, which is when "the party

has the right to apply to a court for relief."  *1000 Va. Ltd. P'ship v. Vertecs Corp.*, 146

P.3d 423, 428 (Wash. 2006).  However, "where the plaintiff is unaware of harm

1   sustained, a 'literal application of the statute of limitations' could 'result in grave

2   injustice.'" *Id*. (quoting *Gazija v. Nicholas Jerns Co.*, 543 P.2d 338, 341 (Wash. 1975)).

3   "'[U]nder the discovery rule, a cause of action does not accrue—and as a result the

4   statute of limitations does not begin to run—until the plaintiff knows, or has reason to

5   know, the factual basis for the cause of action.'" *Schreiner Farms, Inc. v. Am. Tower,*

6   *Inc.*, 293 P.3d 407, 411 (Wash. Ct. App. 2013) (quoting *Bowles v. Wash. Dep't of Ret.*

7   *Sys.*, 847 P.2d 440, 454 (Wash. 1993)).

8         The parties agree that Mr. Al-Bustani's claims under the WPRA and for indirect

9   copyright infringement are each subject to a three-year statute of limitations, while his

10  false light, outrage, and NIED claims are governed by a two-year statute of limitations.

11  (*See* MTD at 11; MTD Resp. at 9.)  The court agrees.  *See* RCW 4.16.100.080(2),

12  *Eastwood v. Cascade Broad. Co.*, 722 P.2d 1295, 1296 (Wash. 1986) (applying a

13  two-year statute of limitations to false light invasion of privacy where the underlying

14  facts give rise to a defamation claim); 17 U.S.C. § 507(b).

15        Gen Media asserts that all of Mr. Al-Bustani's claims against it are time-barred

16  because he did not name Gen Media in the amended complaint until September 22, 2022,

17  more than three years after the July 18, 2019 broadcast of the Ground Zero Show.  (MTD

18  at 11-14; *see also* Dkt.)  Mr. Al-Bustani responds that the discovery rule tolls the statute

19  of limitations on each of his claims.  (MTD Resp. at 6-8.)  Mr. Al-Bustani states that he

20  "first became aware of the [statements at issue] in April of 2021."  (Am. Compl. ¶ 49.)

21  Gen Media argues that the discovery rule does not apply to Mr. Al-Bustani's WPRA,

22

NIED, or false light claims.  (MTD at 11-12.[6])  Gen Media argues further that even if the discovery rule applies to any of his claims, Mr. Al-Bustani does not plausibly allege that his claims are timely filed.  (MTD at 12; MTD Reply at 5-6.)  The court addresses each of Gen Media's arguments in turn.

As a threshold matter, the court rejects Gen Media's argument that Mr. Al-Bustani fails to plausibly allege facts that render his claims timely.  (*See* MTD at 12-13.)  Gen Media argues that Mr. Al-Bustani's statement that he discovered the statements in April 2021 is not enough to plausibly allege the same, and that his belated discovery is not plausible because he was aware of the Ground Zero Show in general and in contact with the show's host days before the broadcast.  (*Id.*)  As it must, the court accepts as true Mr. Al-Bustani's statement that he became aware of the damaging statements in April of 2021.[7]  *See Iqbal*, 556 U.S. at 678 (requiring only sufficient factual allegations to allow the court to draw a "reasonable inference" in the plaintiff's favor).  Therefore, the statute of limitations accrued in April 2021 with respect to each of Mr. Al-Bustani's claims to which the discovery rule applies.  Accordingly, the court concludes that Mr. Al-Bustani's claims for copyright infringement and outrage are not barred by the statute of limitations.

---

[6] The parties do not dispute, however, that the discovery rule applies to Mr. Al-Bustani's copyright infringement and outrage claims.  (MTD at 12 (citing *Starz Ent. LLC v. MGM Domestic TV Distrib., LLC*, 39 F.4th 1236, 1237 (9th Cir. 2022)); MTD Resp. at 6 (citing *Doe v. Finch*, 942 P.2d 359, 361 (Wash. 1997)); MTD Reply at 5.)  The court agrees.

[7] The case Gen Media relies on is distinguishable.  (*See* MTD at 12 (citing *Velicer v. Falconhead Cap., LLC*, No. C19-1505JLR, 2020 WL 1182962, at *6-7 (Mar. 11, 2020)).)  The *Velicer* plaintiffs failed to allege *any* facts regarding when they discovered the basis of their claims.  *Velicer*, 2020 WL 1182962, at *6-7.

1    The court must now determine whether, under Washington law,[8] the discovery

2    rule applies to Mr. Al-Bustani's false light claim.[9]  *Gravquick A/S v. Trimble Navigation*

3    *Intern. Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003) ("A federal court applying [state] law

4    must apply the law as it believes [that state's] [s]upreme [c]ourt would apply it.").

5    Where, as here, there is no controlling Washington Supreme Court decision, this court

6    must predict how that court would decide the issue, using intermediate appellate court

7    decisions, statutes, and decisions from other jurisdictions as interpretive aids.  *Id.*; *see*

8    *also Soltani v. W. & S. Life Ins. Co.*, 258 F.3d 1038, 1045-46 (9th Cir. 2001).  For the

9    following reasons, the court concludes that the Washington Supreme Court would not

10   apply the discovery rule to a false light claim where the allegedly false statement at issue

11   was publicly available.

12       Generally, Washington courts apply the discovery rule to two categories of cases:

13   (1) those in which the defendant conceals a material fact from the plaintiff; and (2) those

14   in which the nature of the plaintiff's injury makes it difficult for the plaintiff to learn of

15   the material facts during the limitations period.  *Crisman v. Crisman*, 931 P.2d 163, 166

16   (Wash. Ct. App. 1997); *see also Kittinger v. Boeing Co.*, 585 P.2d 812, 813-14 (Wash.

---

[8] The court rejects Mr. Al-Bustani's argument that the discovery rule always applies in federal litigation.  (*See* MTD Resp. at 5 (quoting *Mangum v. Action Collection Serv., Inc*, 575 F.3d 935, 940 (9th Cir. 2009)).)  Limitations on state causes of actions, and any applicable tolling rules, are creatures of state law, regardless of the litigation forum.  *See generally*, RCW 4.16.005 *et seq.* (setting statutes of limitations on causes of action under Washington law); *see also, e.g., Del Guzzi Const. Co. v. Global Northwest, Ltd., Inc.*, 719 P.2d 120, 124 (Wash. 1986) (construing state law to determine whether discovery rule applied to state law cause of action).

[9] The court need not evaluate whether the discovery rule applies to Mr. Al-Bustani's claims under the WPRA or for NIED because those claims are subject to dismissal for the reasons articulated below.  *See infra* §§ III.E, F.

1 | Ct. App. 1978) (noting that "the general rule is that the [libelous] action accrues at the

2 | time of the publication" but nevertheless applying the discovery rule because publication

3 | was in confidential memo).  But Washington courts refuse to apply the discovery rule to

4 | legal claims where the underlying facts are generally knowable with reasonable diligence

5 | within the limitations period.  *See, e.g., Antonius v. King Cnty.*, 103 P.3d 729, 736-37

6 | (Wash. 2004) (hostile work environment); *Douchette v. Bethel Sch. Dist. No. 403*, 818

7 | P.2d 1362, 1366 (Wash. 1991) (age discrimination); *Bradley v. Am. Smelting & Refining*

8 | *Co.*, 709 P.2d 782, 791-92 (Wash. 1985) (continuing torts).

9 |       Application of the discovery rule is thus "limited to cases in which the plaintiffs

10 | could not have immediately known of their injuries."  *In re Ests. of Hibbard*, 826 P.2d

11 | 690, 696 (Wash. 1992).  The Washington Court of Appeals case Mr. Al-Bustani cites is

12 | not to the contrary.  (*See* MTD Resp. at 6 (citing *Dezihan v. State*, No. 37262-6-III, 2021

13 | WL 1103634, at *5 (Wash. Ct. App. March 3, 2021), *rev denied*, 492 P.3d 173 (Wash.)).)

14 | The *Dezihan* court applied the discovery rule to an invasion of privacy claim where the

15 | actionable publication was a private communication between the plaintiff's prospective

16 | employers about his prior whistleblower activity.  *Dezihan*, 2021 WL 1103634, at *5.

17 | The plaintiff did not know—but more importantly, could not have known—about the

18 | harmful statement until someone informed him of the private communication.  *Id.*; *see*

19 | *also Roush v. Akal Security, Inc.*, No. 2:17-cv-358RMP, 2020 WL 5996424, at *5 (E.D.

20 | Wash. Oct. 9, 2020) (suggesting that the discovery rule applies to invasion of privacy

21 | claim where the publication was concealed (citing *1000 Virginia*, 146 P.3d at 428)).

22 |

1   Here, by contrast, Mr. Al-Bustani does not allege that the statements at issue in his

2   false light invasion of privacy claim against Gen Media were concealed from, or

3   otherwise unavailable to, him during the two-year limitations period.  (*See* Am. Compl.

4   ¶ 49 (stating only that he became aware of the publication in April 2021)); *Crisman*, 931

5   P.2d at 166.[10]  The court cannot conclude, moreover, that the nature of the injury in a

6   false light claim arising from public statements makes it difficult for the plaintiff to detect

7   the material facts within the claim's two-year limitations period.  *See Crisman*, 931 P.2d

8   at 166.  Accordingly, Washington law does not permit the court to apply the discovery

9   rule to Mr. Al-Bustani's false light claim against Gen Media for the statements made in

10   its public broadcast of the Ground Zero Show.

11   Because Mr. Al-Bustani's false light claim is not subject to equitable tolling, the

12   statute of limitations accrued when the Ground Zero Show was first broadcast on July 18,

13   2019.  (Am. Compl. ¶ 34.)  Mr. Al-Bustani's deadline to file a claim for false light

14   invasion of privacy based on statements made in the Ground Zero Show was two years

15   later, on July 18, 2021.  *See Eastwood*, 722 P.2d at 1296.  However, Mr. Al-Bustani did

16   not commence this action until April 11, 2022.  (*See generally* Compl.)  Accordingly, the

17   court DISMISSES Mr. Al-Bustani's claim for false light invasion of privacy against Gen

18   Media as untimely.[11]

19

20   [10] In fact, Mr. Al-Bustani was aware of his injury during the limitations period but did not
     file suit for another year, which weighs against equitable tolling.  *See Crisman*, 931 P.2d at 166

21   (the discovery rule applies "[i]f the delay was not caused by the plaintiff sleeping on his rights").

22   [11] Mr. Al-Bustani argues that the claims in his amended complaint relate back to the
     original complaint.  (MTD Reply at 9-11.)  The court need not address this argument because,

1

**D.      Whether Mr. Al-Bustani Fails to State a Claim for Vicarious Copyright Infringement**

2

"Vicarious infringement occurs when one profits from direct infringement while

3

declining to exercise a right to stop or limit" the directly infringing activity.  *Ludvarts,*

4

*LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1071 (9th Cir. 2013) (citing

5

*Metro-Goldwyn-Meyer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)).  A

6

plaintiff must therefore plausibly plead the predicate claim for direct infringement in

7

order to survive a motion to dismiss his vicarious infringement claim.  *See, e.g., Grokster*,

8

545 U.S. at 930.  A plaintiff establishes a prima facie case of direct infringement by

9

demonstrating (1) ownership of the allegedly infringed material and (2) that the alleged

10

infringers violated at least one exclusive right granted to copyright holders.  *A & M*

11

*Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001)).  A copyright

12

holder's five exclusive rights are to reproduce, prepare derivatives of, distribute copies

13

of, perform, and display the copyrighted work.  17 U.S.C. § 106.

14

Mr. Al-Bustani alleges that several Defendants, including Mr. Alger—the only

15

guest on the Ground Zero Show accused of direct copyright infringement—engaged in

16

direct copyright infringement by "copying[,] reproducing, and distributing identical or

17

substantially similar" materials to those copyrighted by Ms. Twyman's estate, thereby

18

infringing on Mr. Al-Bustani's exclusive rights.  (*See* Am. Compl. ¶¶ 56-61; *see also id.*

19

¶ 58, Ex. A).)  In support of this allegation, Mr. Al-Bustani refers to the Ground Zero

20

21

even if Mr. Al-Bustani's amended complaint met the relation back requirements, his false light
claim for statements made on the Ground Zero Show was already untimely when he filed the

22

original complaint on April 11, 2022.  *See Eastwood,* 722 P.2d at 1296; (*see also* Dkt.).

1  Show parties' discussion of Ms. Twyman's work.  (Am. Compl. ¶¶ 35, 37; *see also*

2  Partial Transcript at 8 ("[M]aybe there needs to be a concerted effort by a group of people

3  to go in and try to get that information and . . . make sure that her body of work is

4  restored or . . . taken care of"); *see* MTD Resp. at 12.)  Mr. Al-Bustani's vicarious

5  copyright infringement claim against Gen Media alleges that Gen Media had the right

6  and ability to control Mr. Alger's conduct, that it failed to exercise that right and ability,

7  and that it received a direct financial benefit from Mr. Alger's allegedly infringing

8  conduct.  (*See* Am. Compl. ¶¶ 67-73.)

9        Gen Media argues that Mr. Al-Bustani's claim for vicarious copyright

10  infringement fails because he fails to allege any facts to show that direct copyright

11  infringement occurred on the Ground Zero Show.  (MTD at 14-15.)  The court agrees.

12  Although the court assumes, without deciding, that Ms. Twyman's works were subject to

13  copyright, the court cannot identify any reproduction, distribution, or display of Ms.

14  Twyman's copyrighted works in the discussion quoted in the amended complaint, or

15  anywhere in the materials incorporated by reference.  (*See* Am. Compl.; Partial

16  Transcript; Quora Article); *see also* 17 U.S.C. § 106.  Mr. Al-Bustani states only that

17  "[t]he suggestions given on the show also promote the unauthorized copying and

18  distribution of Ms. Twyman's copyrighted Works or derivatives thereof."  (Am. Compl.

19  ¶ 37.)  Mr. Al-Bustani does not, however, offer any authority for the position that merely

20  "promot[ing] the unauthorized copying and distribution" of copyrighted works

21  constitutes direct copyright infringement or otherwise supports a claim for vicarious

22  copyright infringement.  (*See* MTD Resp.)  To the extent Mr. Al-Bustani alleges direct

1 copyright infringement by other parties, he does not allege that Gen Media is vicariously

2 liable for any infringing activities that did not occur on the Ground Zero Show.  (*See*

3 *generally* Am. Compl.)

4      Because Mr. Al-Bustani's claim for vicarious copyright infringement fails at this

5 first step, the court need not address the additional elements of his claim or Gen Media's

6 additional arguments.  The court DISMISSES Mr. Al-Bustani's claim for vicarious

7 copyright infringement against Gen Media.

8 **E.      Whether Mr. Al-Bustani Fails to State a Plausible Claim Under the WPRA**

9      The WPRA establishes that "[e]very individual or personality has a property right

10 in the use of his or her name, voice, signature, photograph, or likeness," which survives

11 "the death of the individual or personality."  RCW 63.60.010.  A violation of the WPRA

12 occurs, in relevant part, when:

13      [a]ny person . . . uses or authorizes the use of a living or deceased
       individual's or personality's name, voice, signature, photograph, or likeness,
14     on or in goods, merchandise, or products entered into commerce in this
       state . . . without written or oral, express or implied consent of the owner of
15     the right.

16 RCW 63.60.050.  However, the WPRA exempts from liability the unauthorized use of a

17 name "in connection with matters of cultural, historical, political, religious, educational,

18 newsworthy, or public interest, including, without limitation, comment, criticism, satire,

19 and parody."  RCW 63.60.070(1).

20      This court has twice determined that Ms. Twyman's death is a matter of public

21 concern and that discussions thereof are not actionable under the WPRA.  (*See* 8/9/22

22 Order at 9-12 (dismissing Mr. Al-Bustani's WPRA claim against Ms. Bella without

1  prejudice); 11/21/22 Order (Dkt. # 70) at 6-7 (determining that the amended complaint

2  did not cure deficiencies and dismissing Mr. Al-Bustani's WPRA claim against Ms. Bella

3  with prejudice).)  For the same reasons articulated in this court's prior orders, the court

4  concludes the discussion of Ms. Twyman's death and the use of her voice on the Ground

5  Zero Show are exempt from liability under the WPRA.  (*See* 8/9/22 Order at 10-11;

6  11/21/22 Order at 6-7); RCW 63.60.070(1).  Accordingly, the court DISMISSES Mr.

7  Al-Bustani's claim that Gen Media violated his rights under the WPRA.

8  **F.      Whether Mr. Al-Bustani Abandons His Claims for NIED and Outrage**

9         Although Mr. Al-Bustani brings claims for NIED and outrage against Gen Media,

10  he does not respond to Gen Media's arguments for their dismissal (s*ee* MTD Resp.) or

11  seek leave to amend these claims (*see id*. at 16 (requesting "leave to file a [s]econd

12  [a]mended [c]omplaint to allege sufficient facts to support his claims for vicarious

13  copyright infringement, violation of the WPRA, and false light invasion of privacy," but

14  not outrage or NIED); *see also* 2d MTA ¶¶ 88-99 (not proposing amendments to claims

15  for outrage and NIED)).  The court interprets Mr. Al-Bustani's failure to respond to Gen

16  Media's arguments as a concession that the arguments raise valid reasons to dismiss these

17  claims.  *See, e.g., Singh v. Baidwan*, 651 F. App'x 616, 618 (9th Cir. 2016) (affirming

18  dismissal of claims with prejudice where plaintiff failed to substantively respond to

19  defendant's motion to dismiss).

20         The court agrees with Gen Media that Mr. Al-Bustani's NIED and outrage claims

21  are each derivative of his copyright infringement, WPRA, and false light claims.  (*See*

22  Am. Compl. ¶ 88 ("Defendants engaged in extreme and outrageous conduct by

1    intentionally infringing Plaintiff's copyrights and personality rights and by intentionally

2    casting Plaintiff in a false light"), ¶ 95 (alleging that the Defendants knew that "their

3    failure to . . . abide by state and federal law relating to copyright, personality rights, and

4    the right to privacy would cause Plaintiff to suffer from . . . emotional and physical

5    distress.").)  Because the court has dismissed each of the predicate claims on which these

6    claims depend, the court DISMISSES Mr. Al-Bustani's claims for NIED and outrage

7    against Gen Media for failure to state a claim for relief.

8    **G.    Leave to Amend**

9         On a Rule 12(b)(6) motion, "a district court should grant leave to amend . . . unless

10   it determines that the pleading could not possibly be cured by the allegation of other

11   facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir.

12   1990).  The court, however, retains discretion to deny leave to amend, particularly where

13   the plaintiff has previously filed an amended complaint.  *Sisseton-Wahpeton Sioux Tribe*

14   *v. United States*, 90 F.3d 351, 355 (9th Cir. 1996); *Turner v. Cnty. of Los Angeles*, 18 F.

15   App'x 592, 597 (9th Cir. 2001) (concluding that the court did not abuse its discretion in

16   denying the second amended complaint with prejudice and without leave to amend where

17   the court had already allowed the plaintiff to amend their complaint with instructions on

18   how to cure the complaint's deficiencies); *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042,

19   1052 (9th Cir. 2008) ("Appellants fail to state what additional facts they would plead if

20   given leave to amend . . . . Accordingly, amendment would be futile.").

21        Mr. Al-Bustani seeks leave to amend his complaint with respect to his claims for

22   vicarious copyright infringement, false light, and violation of the WPRA.  (MTD Resp. at

2, 16; *see also* 2d MTA; 2d MTA Reply.)  Gen Media states that it does not oppose Mr. Al-Bustani's request for leave to amend his complaint but nevertheless asserts that his claims against Gen Media cannot be cured by amendment.  (*See* 2d MTA Resp.)

The court concludes that Mr. Al-Bustani's WPRA claim cannot be cured by amendment.  (*See supra* § III.E.)  Moreover, Mr. Al-Bustani has already amended the factual allegations in support of his WPRA claim but failed to cure deficiencies.  (*See* 11/21/22 Order.)  Accordingly, the court DENIES Mr. Al-Bustani's request for leave to amend his WPRA claim against Gen Media.  Similarly, because the court has concluded that Mr. Al-Bustani's false light invasion of privacy claim was not timely filed (*see supra* § III.C), it must dismiss this claim with prejudice and DENIES Mr. Al-Bustani's request for leave to amend his false light claim.

The court, however, concludes that amendment would not be futile with respect to Mr. Al-Bustani's vicarious copyright infringement claim.[12]  *See Cook*, 911 F.2d at 247. The court GRANTS Mr. Al-Bustani's leave to amend his vicarious copyright infringement claim against Gen Media.  Mr. Al-Bustani shall file his second amended complaint, if any, no later than **February 17, 2023**.  The court warns Mr. Al-Bustani that failure to timely file an amended complaint that remedies the aforementioned deficiencies will result in the dismissal of his vicarious copyright infringement claim with prejudice. In light of these rulings, the court DENIES Mr. Al-Bustani's second motion to amend his complaint as moot.

---

[12] The court takes no position on whether the specific facts alleged in Mr. Al-Bustani's proposed second amended complaint cure the deficiencies identified herein.

1

## IV.   CONCLUSION

2          For the foregoing reasons, the court GRANTS in part Gen Media's motion to

3   dismiss (Dkt. # 79) and DENIES Mr. Al-Bustani's second motion to amend (Dkt. # 84)

4   as moot.  Mr. Al-Bustani's claims against Gen Media for NIED, outrage, false light

5   invasion of privacy, and violations of the WPRA are DISMISSED with prejudice.  Mr.

6   Al-Bustani's claim against Gen Media for vicarious copyright infringement is

7   DISMISSED without prejudice and with leave to amend.  Mr. Al-Bustani may file a

8   second amended complaint in conformity with this order no later than **February 17,**

9   **2023**.

10         Dated this 6th day of February, 2023.

11

12

13                                                 JAMES L. ROBART
                                                   United States District Judge

14

15

16

17

18

19

20

21

22

ORDER - 21