UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AL-HARETH AL-BUSTANI,

                Plaintiff,

    v.

SEAN B. ALGER, et al.,

                Defendants.

CASE NO. C22-5238JLR

ORDER

## I.    INTRODUCTION

Before the court is Defendants Sean B. Alger, and S.B. Alger Studio Productions LLC (together, the "Alger Defendants") and James Maiden's (collectively, "Defendants") motion to set aside the entry of default judgment against them.  (Mot. (Dkt. # 168); Reply (Dkt. # 173).)  Plaintiff Al-Hareth Al-Bustani opposes Defendants' motion.  (Resp. (Dkt. # 171).)  The court has considered the parties' submissions, the relevant portions of the

1   record, and the applicable law.  Being fully advised,[1] the court DENIES Defendants'

2   motion.

3                          **II.    BACKGROUND**

4         On April 11, 2022, Mr. Al-Bustani filed this action against numerous individuals

5   and entities, including Defendants,[2] in connection with the alleged copyright

6   infringement of certain works and personality rights of Mr. Al-Bustani's late wife, author

7   Tracy Twyman, who died by suicide.  (Compl. (Dkt. # 1) at 2; *see generally* 2d Am.

8   Compl. (Dkt. # 94).)  Defendants allegedly distributed Ms. Twyman's copyrighted works

9   and likeness without permission and fueled rumors that Ms. Twyman's death was not a

10  suicide but rather a murder committed by Mr. Al-Bustanti.  (2d Am. Compl. ¶¶ 2, 28, 34,

11  46-48.)

12        As relevant here, the Clerk entered default against Mr. Maiden in connection with

13  his failure to file a responsive pleading in this case.  (Maiden Default Entry (Dkt. # 90);

14  *see also* Maiden Default Mot. (Dkt. # 89) (requesting entry of default);.)  The Alger

15  Defendants initially participated in the litigation; however, on February 26, 2024, the

16  court granted default in Mr. Al-Bustani's favor as a sanction for the Alger Defendants'

17  failure to abide by the court's discovery orders.  (2/26/24 Order (Dkt. # 147) at 2-5

18  (describing the Alger Defendants' extensive history of noncompliance); *id.* at 11.)

19  _____

20        [1] Mr. Albusanti requested oral argument.  (Resp. at 1.)  The court concludes, however, that oral argument is not necessary to its disposition of Defendants' motion.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

21        [2] Mr. Maiden was not included as a defendant in the original complaint, but was added as a defendant in late 2022.  (*See* Maiden Summons (Dkt. # 54); Maiden Service Aff. (Dkt. # 81); Am. Compl. (Dkt. # 44) at 2.)

22

1   Shortly thereafter, the Clerk entered default against the Alger Defendants. (Alger Defs.

2   Default Entry (Dkt. # 148).)

3        In April 2024, Mr. Al-Bustani moved for the entry of default judgment against the

4   Alger Defendants and Mr. Maiden pursuant to Federal Rule of Civil Procedure 55. (DJ

5   Mot. (Dkt. # 149); *see also* 5/31/24 Memo. (Dkt. # 155) (clarifying that Mr. Al-Bustani

6   also intended to move for default judgment against S.B. Alger Studio Productions,

7   LLC).) The court, in pertinent part, granted default judgment in Mr. Al-Bustani's favor

8   on his direct copyright infringement claims against Mr. Alger and Mr. Maiden and on his

9   vicarious copyright infringement claim against S.B. Alger Studio Productions, LLC. (*See*

10  6/28/24 Order (Dkt. # 156) at 1-3; Default Judgment (Dkt. # 166).)

11       On April 14, 2025, Defendants filed the instant motion pursuant to Rule 60(b)

12  seeking to have the default judgment set aside. (*See* Mot.) The motion is fully briefed

13  and is ripe for decision.

14  **III.    ANALYSIS**

15       The court understands Defendants to argue that the entry of default judgment

16  should be set aside as to all three of them under Rule 60(b)(1) and (6), and as to Mr.

17  Maiden specifically, also under Rule 60(b)(4) for invalid service of process. (Mot. at 2-3;

18  Reply at 2.) Because Defendants' improper service argument under Rule 60(b)(4) raises

19  questions of the court's jurisdiction over Mr. Maiden, *see Beecher v. Wallace*, 381 F.2d

20  372 (9th Cir. 1967), the court addresses that argument first, and then turns to Defendants'

21  arguments under Rule 60(b)(1) and (6).

22

1

## A.    Rule 60(b)(4) Argument

2

In their motion, Defendants argue the entry of default judgment should be set aside

3  as to Mr. Maiden because, in their view, he was not properly served with process.  (Mot.

4  at 2-3.)  Under Rule 60(b)(4), a final judgment is void if the defendant has not properly

5  been served pursuant to Federal Rule of Civil Procedure 4.  *See* Fed. R. Civ. P. 60(b)(4);

6  *see Ferrari Fin. Servs., Inc. v. Biggs*, No. C19-5873TSZ, 2022 WL 1027713, at *2 (W.D.

7  Wash. Apr. 6, 2022) ("if the defendant is not properly served, a default judgment is void

8  under Rule 60(b)(4)") (citation omitted).  Under Rule 4(e), service of process may be

9  made on an individual within any United States judicial district by, in pertinent part,

10  "leaving a copy of [the summons and complaint] at the individual's dwelling or usual

11  place of abode with someone of suitable age and discretion who resides there."  Fed. R.

12  Civ. P. 4(e).

13

Here, Mr. Maiden argues that he was not properly served because he was not living

14  at the address where process was served on November 2, 2022 and was not notified that

15  he was served.  (Mot. at 3; Maiden Decl. (Dkt. # 170) ¶ 11; *see also* Maiden Service Aff.

16  (noting that process was served on November 2, 2022).)  Mr. Maiden represents that he

17  became aware of "the court documents naming [him] in the complaint" on January 10,

18  2023, after his then-counsel forwarded those documents to him.  (Maiden Decl. ¶ 7.)  As

19  explained below, the court concludes that Mr. Maiden was properly served within the

20  meaning of Rule 4.

21

22

1    A defendant who had actual notice of the lawsuit against him[3] but "delayed in

2    bringing the motion until after entry of default judgment[] bears the burden of proving

3    that service did not occur." *S.E.C. v. Internet Solutions for Bus. Inc.*, 509 F.3d 1161,

4    1165 (9th Cir. 2007); *see id.* at 1166 ("The defendant who . . . allows default judgment to

5    be entered and waits, for whatever reason, until a later time to challenge the plaintiff's

6    action, should have to bear the consequences of such delay.").  In the face of a

7    defendant's allegations of improper service, "[a] signed return of service constitutes

8    prima facie evidence of valid service which can be overcome only by strong and

9    convincing evidence." *Id.* at 1163.  Because Mr. Maiden had actual notice that Mr. Al-

10   Bustani sued him (Maiden Decl. ¶ 7), he must therefore demonstrate that he was not

11   properly served. *Id.* at 1165.  This burden is "a substantial one." *Id.* at 1166.

12       In the instant case, Mr. Al-Bustani filed a signed return of service indicating that

13   on November 2, 2022, the process server left a copy of the summons and amended

14   complaint with "'Jane Doe', a co-resident, at [Mr. Maiden's] residence, located at 4 N.

15   Wilbur Avenue" (the "Wilbur Residence") in Walla Walla, Washington.  (Maiden

16   Service Aff.)  The signed returned of service therefore provides prima facie evidence of

17   valid proof of service and may be rebutted only on a showing of "strong and convincing

18   evidence." *See Internet Solutions*, 509 F.3d at 1163.

19

20       [3] To the extent Mr. Maiden argues that he did not have notice that default judgment had
     been entered against him, this argument is irrelevant to the court's Rule 60(b)(4) analysis.
21   *Internet Solutions*, 509 F.3d at 1166 ("Whether or not [the defendant] had notice *of the default
     judgment* is irrelevant.  Under the rule we have adopted, we look at whether the defaulting
22   defendant had notice that *suit had been filed*.") (emphasis in original).

Mr. Maiden offers his own declaration to support his argument that he was not properly served. In that declaration, Mr. Maiden represents that he owns the Wilbur Residence, but was not living there during November 2022. (*See* Maiden Decl. (Dkt. # 170) ¶¶ 7, 9, 11.) Specifically, Mr. Maiden states that he was living with family in College Place, Washington during the period between August 2022 and December 10, 2022 because he "had a falling out" with his co-resident at the Wilbur Residence—his ex-girlfriend—and therefore "could no longer remain" in the Wilbur Residence until she moved out in November 2022. (*Id.* ¶ 7; *id.* ¶ 11 (referring to the co-resident as his "ex-girlfriend"); *see also id.* ¶ 11 (stating that he "moved out of [his] own house in August 2022" due to his ex-girlfriend's threats of violence).) Mr. Maiden represents that he first returned to the Wilbur Residence in December 2022. (*Id.* ¶ 7.) He further represents that he was "not on speaking terms" with his ex-girlfriend during November 2022 and that she did not notify him that process had been served. (*Id.* ¶¶ 7, 11.) Mr. Maiden states that he prepared a letter to the court in February 2023 detailing this information, and Mr. Hayton prepared a declaration describing the claimed service issue around that same time. (*Id.* ¶¶ 7, 11.) Neither of these documents, however, were filed with the court. (*Id.* ¶¶ 7, 11.)

Mr. Maiden's improper service argument is two-fold. Specifically, he contends that he was not properly served because (1) his ex-girlfriend did not inform him that he was served; and (2) he had moved out of the Wilbur Residence for a few months and was staying with family at the time process was served. (*See generally* Maiden Decl.) Both of these arguments, however, are unavailing. As to the first argument, Rule 4(e), service

1  is proper if copies of the complaint and summons are left at the defendant's "dwelling or

2  usual place of abode with someone of suitable age and discretion."  Fed. R. Civ. P.

3  4(e)(2)(A)-(B).  Notably, Rule 4(e) does not require that a defendant be *told* that he was

4  served with process in order for the process to be valid.  *See* Fed. R. Civ. P. 4(e); *see*

5  *craigslist, Inc. v. Hubert*, 278 F.R.D. 510, 514 (N.D. Cal. 2011) (reaching the same

6  conclusion).  And as to the second argument, courts across jurisdictions have conceded

7  that service is proper when made upon someone of suitable age and discretion living in

8  the defendant's dwelling or usual place of abode, even if the defendant was temporarily

9  living at a different address at the time of service.  *See craigslist, Inc.*, 278 F.R.D. at 516;

10  *In re Hayes*, 453 B.R. 270, 280 (E.D. Mich. 2011) (citing cases); *cf. Blackhawk Heating*

11  *& Plumbing Co. v. Turner*, 50 F.R.D. 144, 149 (D. Ariz. 1970) (addressing an earlier

12  version of Rule 4 and holding that a defendant who received actual notice, paid rent,[4]

13  made no effort to leave a forwarding address, and left his furniture at his former address,

14  was properly served).

15       At bottom, Mr. Maiden states that he owned the Wilbur Residence and typically

16  lived there, except during the period between August 2022 and November 2022, when he

17  began experiencing difficulties with his ex-girlfriend.  (Maiden Decl. ¶ 7.)  But "even if it

18  is the case that Defendant temporarily resided with [his family] for a few months," the

19  Wilbur Residence "nonetheless bore sufficient indicia of permanence to constitute" Mr.

20  Maiden's "usual abode" for purposes of Rule 4(e).  *See craigslist, Inc.*, 278 F.R.D. at

21

22  _____

   [4] Notably, Mr. Maiden represents that he continued to pay his mortgage between August 2022 and December 2022, although he did not pay the utilities.  (Maiden Decl. ¶ 11.)

516.  Accordingly, the court concludes that Mr. Maiden was properly served in accordance with Rule 4.

Having resolved Defendants' Rule 60(b)(4) arguments as to Mr. Maiden, the court will now address Defendants' remaining arguments.  Before turning to the merits of Defendants' arguments under Rule 60(b)(1) and (6), the court first addresses he timeliness of their motion.

**B.    Timeliness of a Rule 60(b) Motion**

A motion to set aside a judgment under Rule 60(b) "must be made within a reasonable time[.]"  Fed. R. Civ. P. 60(c)(1).[5]  In considering whether a Rule 60(b) motion was brought within a "reasonable time," courts consider the "totality of the circumstances[,]" "taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to the other parties."  *Lemoge v. United States,* 587 F.3d 1188, 1196 (9th Cir. 2009).  Here, Defendants represent that their former counsel, Thomas Hayton, "stopped communicating with them around November 2024" and did not tell them that default judgment had been entered against them.  (Mot. at 2.)  Defendants further represent that they retained new counsel in December 2024 and January 2025,[6] who informed

---

[5] As relevant here, Rule 60(c)(1) further provides that motions made under Rule 60(b)(1) must be made "no more than a year after the entry of the judgment" at issue.  *See* Fed. R. Civ. P. 60(c)(1).  Here, Defendants filed their motion within the one-year time limitation.  (*See* Mot. (filed on April 14, 2025); Default Judgment (entered on August 18, 2024).)

[6] Defendants represent that new counsel Tim S. Billick was retained by the Alger Defendants in December 2024, and that Mr. Maiden "inquired on a joint representation agreement" in or around January 2025.  (Mot. at 5; *id.* at 6 (citing Alger Decl. (Dkt. # 169) ¶¶ 12-13; Maiden Decl. (Dkt. # 170) ¶¶ 15-17).)

1  Defendants that default judgment had been entered.  (*See id.*)  Defendants state that they

2  "delay[ed]" in filing the instant motion because Defendants and their new counsel needed

3  to "agree on terms of representation," "investigate what went wrong," "attempt [to]

4  contact [Mr. Hayton's] firm repeatedly," and then "assemble the evidence for this

5  motion."  (*Id.*)

6       The court is not persuaded by Defendants' argument justifying their delay.  For

7  starters, Defendants do not provide any convincing explanation for why it took over four

8  months—between December 2024 to the time they filed the instant motion in April

9  2025—to "investigate" the facts and "assemble" their motion, which they ultimately filed

10  eight months after the court entered default judgment against Defendants in August 2024.

11  (*See* Mot.)   Notably, the basis of Defendants' motion focuses on their communications

12  with Mr. Hayton during the time period before December 2024—communications that

13  Defendants were aware of well before they retained new counsel—and does not appear to

14  include any facts learned during the "investigation" that purportedly took place between

15  December 2024 and April 2025 so as to justify the delay in filing their motion.  (*See* Mot.

16  at 2-5 (describing events preceding December 2024).)  Accordingly, Defendants were

17  aware of the grounds for their instant motion several months before they filed it.  *See*

18  *Million (Far E.) Ltd. v. Lincoln Provisions Inc. USA*, 581 F. App'x 679, 681 (9th Cir.

19  2014) (affirming district court's finding that the defendant's motion to set aside default

20  judgment under Rule 60(b)(1) and (6) was untimely in part because the defendant filed

21  for relief eight months after default judgment was entered and "already knew the grounds

22  for his motion several months" beforehand).  Thus, in considering the totality of the

1    circumstances, the court concludes that Defendants' motion was not filed within a

2    reasonable time.

3    **C.    The Merits of Defendants' Rule 60(b)(1) and (6) Arguments**

4            Even if Defendants' motion under Rule 60(b)(1) and (6) were timely, it would fail

5    on the merits.  Rule 60(b)(1) provides that a final judgment may be set aside for "mistake,

6    inadvertence, surprise, or excusable neglect[.]" Fed. R. Civ. P. 60(b)(1); *see also United*

7    *States v. Aguilar*, 782 F.3d 1101, 1105 (9th Cir. 2015) (applying Rule 60(b) in

8    considering a motion to set aside default judgment).  Rule 60(b)(6) authorizes courts to

9    set aside the entry of default judgment for "any other reason that justifies relief."  Fed. R.

10   Civ. P. 60(b)(6).  In summary, Defendants appear to argue that default judgment should

11   be set aside because they were not "represented by competent or diligent counsel" at the

12   time of the entry of default judgment and "only recently learned that a judgment had been

13   entered against them after their *new* counsel informed them[.]"  (Mot. at 2 (emphasis in

14   original).)  The court examines these arguments below.

15           1.    Rule 60(b)(1) Arguments

16           In considering whether to vacate a default judgment under Rule 60(b)(1) for

17   "mistake, inadvertence, surprise, or excusable neglect[,]" courts consider three "good

18   cause" factors articulated in *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984):[7]

19   "(1) whether the defendant's culpable conduct led to the default; (2) whether the

20

21           [7] The standard for determining whether to set aside the entry of default under Rule 55(c)
     is the same as that used to determine whether default judgment should be set aside under Rule
22   60(b).  *United States v. Aguilar*, 782 F.3d 1101, 1107 n.8 (9th Cir. 2015).

1   defendant has a meritorious defense; or (3) whether reopening the default judgment

2   would prejudice the plaintiff." *Fremont First Nat'l Bank v. Mischief I*, No. C05-1192Z,

3   2006 WL 8454757, at *2 (W.D. Wash. Feb. 14, 2006) (cleaned up and citations omitted).

4   These three factors are disjunctive. *Cassidy v. Tenorio*, 856 F.2d 1412, 1415 (9th Cir.

5   1988). "Hence, a finding that the plaintiff will be prejudiced, *or* that the defendant lacks

6   a meritorious defense, *or* that the defendant's own culpable conduct prompted the default

7   is sufficient to justify the district court's refusal to vacate a default judgment." *Id.*

8   (emphasis in original).

9       Defendants argue that the entry of default judgment against them should be set

10  aside because: (1) Defendants did not knowingly default and diligently moved to set

11  aside the default judgment;[8] (2) Defendants have meritorious defenses to Mr. Al-

12  Bustani's claims; and (3) Mr. Al-Bustani has not demonstrated he would suffer

13  substantial prejudice by setting aside the default judgment. (Mot. at 5-10.) The court

14  addresses each argument in turn.

15      *a.  Culpable Conduct*

16      "[A] defendant's conduct is culpable if he has received actual or constructive notice

17  of the filing of the action and intentionally failed to answer." *TCI Grp. Life Ins. Plan v.*

18  *Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001) (emphasis omitted). The Ninth Circuit has

19  held that, for purposes of the first *Falk* factor, a defendant's conduct is "culpable" where

20  the defendant "acted with bad faith, such as an intention to take advantage of the

21  _____

22  [8] The court understands Defendants to argue that the entry of default judgment was not
    due to their own culpable conduct.

ORDER - 11

1    opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal

2    process." *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d

3    1085, 1092 (9th Cir. 2010).  Notably, "alleged attorney malpractice does not usually

4    provide a basis to set aside a default judgment pursuant to Rule 60(b)(1)."  *Casey v.*

5    *Albertson's, Inc.*, 362 F.3d 1254, 1260 (9th Cir. 2004).  Indeed, parties are typically "held

6    responsible for the acts and ommissions of their chosen counsel."  *Pioneer Inv. Servs. Co.*

7    *v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 397 (1993).[9]

8        Here, the parties do not dispute that the court entered default judgment against

9    Defendants after finding that they failed to meaningfully participate in this action "in

10    either failing to answer the complaint or [by] severely obstructing the discovery process."

11    (*See generally* Mot.; Resp.; *see* 6/28/24 Order at 16, 18.)  Rather, Defendants assert that

12    their failure to meaningfully participate in this case resulted from Mr. Hayton's failure to

13    "ke[ep] [them] abreast of case developments[.]"  (Mot. at 2 (capitalization omitted); *id.* at

14    5.)   The court addresses Defendants' arguments relating to Mr. Maiden and the Alger

15    Defendants and separately.

16        The court entered default judgment against Mr. Maiden in connection with his

17    failure to file a responsive pleading in this matter.  (6/28/24 Order at 16.)  Mr. Maiden

18    appears to assert that he was aware Mr. Al-Bustani moved for the entry of default

19

20        [9] Defendants assert that *Casey* and *Pioneer* are not applicable here because the parties
21    moving to set aside default judgment in those cases were aware of the applicable deadlines and
     case status.  (*See* Reply at 2.)  As the court explains below, however, the evidence shows that
22    Defendants, at a minimum, were at least aware of the default judgment proceedings in this case.
     The court there is not persuaded by Defendants' argument.

1  judgment against him in February 2023, and that he discussed the alleged service of

2  process deficiencies with Mr. Hayton at that time.  (*See* Maiden Decl. ¶¶ 6-7.)

3  Specifically, in February 2023, at the direction of Mr. Hayton, Mr. Maiden prepared a

4  letter to the court explaining his position that he was not properly served.  (Maiden Decl.

5  ¶ 7.)  As of February 7, 2023, Mr. Maiden understood that Mr. Hayton would file a

6  declaration with the court explaining the service issue.  (*Id.* ¶ 8.)

7          Over a year later, in May 2024, Mr. Maiden called Mr. Hayton "to check the

8  progress of the case" because he had "not heard anything from [Mr. Hayton] in a long

9  time[.]"  (*Id.* ¶ 9.)  According to Mr. Maiden, Mr. Hayton told him at that time that he

10  had been "swamped" and had not yet prepared Mr. Maiden's declaration.  (*Id.*)  On May

11  9, 2024, Mr. Maiden sent Mr. Hayton another email explaining why, in his view, he was

12  not properly served.  (*Id.* ¶ 12.)  On that same day, Mr.  Maiden signed a declaration

13  representing that he was not living at the Wilbur Residence during November 2022 and

14  was not notified that he had been served at that time.  (*See id*.)  Mr. Maiden states that, in

15  August 2024, he learned that Mr. Hayton did not file the signed declaration that Mr.

16  Maiden had returned to him on May 9, 2024.  (*Id.* ¶¶ 11, 13.)  According to Mr. Maiden,

17  Mr. Hayton told him that his declaration needed to be revised due to the length of time

18  passed since it was drafted in May.  (*Id.* ¶ 13.)  Mr. Maiden, however, did not hear from

19  Mr. Hayton regarding his declaration after August 2024.  (*Id.* (stating that "several

20  emails" he sent to Mr. Hayton between August 2024 and November 2024 "went

21  unanswered").)

22

1    In the instant motion, Mr. Maiden appears to argue that his failure to file a

2    responsive pleading or otherwise participate in this action was solely the fault of Mr.

3    Hayton.  The record, however, shows that Mr. Maiden knew about the default judgment

4    and began experiencing communication difficulties with Mr. Hayton as late as July 22,

5    2024—before the Clerk entered default judgment against him.  Specifically, on that date,

6    Mr. Maiden asked Mr. Hayton via email whether he "still inten[ded] on filing on

7    [Defendants'] behalf in such a way that this summary judgment[10] will be reversed[.]"

8    (Mot. at 3; Alger Decl. ¶¶ 5-6.)  In that same communication, Mr. Maiden told Mr.

9    Hayton that "[a] lot of stress and worry is caused by *so little forthright communication at*

10    *this time*" and asked Mr. Hayton to "[p]lease, . . . at least give us [i.e., Defendants] the

11    most basic details[.]"  (Alger Decl. ¶ 6 (emphasis added).)[11]  Mr. Hayton, however, did

12    not answer this communication.  (*See* Alger Decl. ¶¶ 7-8.)

13    At a minimum, Mr. Maiden had sufficient awareness beginning in May 2024—

14    before the court ruled on Mr. Al-Bustani's default judgment motion—that Mr. Hayton

15    had not filed documents on his behalf and was not acting diligently.  (*See* 6/28/24 Order;

16    DJ Mot.)  Mr. Maiden further represents that, after February 2023, he waited over a year

17    to follow up with Mr. Hayton regarding the status of the declaration that he believed Mr.

18    Hayton was preparing for filing.  (*See* Maiden Decl. ¶¶ 6, 8 (describing February 2023

19

20    [10] Because no summary judgment motions or summary judgment orders were ever filed
in this case, the court understands Mr. Maiden to be referring to the court's order directing the
Clerk to enter default judgment against Defendants.

21    [11] The court understands that Mr. Alger was copied on this email.  (*See* Alger Decl. ¶¶ 5-

22    7.)

1   discussions with Mr. Hayton regarding the declaration); *id.* ¶ 9 (stating that he called Mr.

2   Hayton in May 2024 "to check the progress of the case" after "not hear[ing] anything . . .

3   in a long time").)  Courts within the Ninth Circuit have found movants to be culpable in

4   similar circumstances.  *See, e.g.*, *Strategic Partners, Inc. v. Koi Designs, LLC*, No.

5   2:17-cv-00236-TJH (GJSx), 2019 WL 3249586, at *4 (C.D. Cal. Apr. 22, 2019) ("Even

6   crediting that [former counsel] lied to the [defendant's] officers and did not voluntarily

7   provide them with copies of court orders or documents filed, the company was, at a

8   minimum, willfully blind if it missed nearly two years of red flags.").  Mr. Maiden is

9   bound by the actions of Mr. Hayton.  *See Casey*, 362 F.3d at 1260.  "This is especially

10  the case where [he] has waited [nearly] a year to complain about the failings" of Mr.

11  Hayton.  *Id.*; *see also Strategic Partners*, 2019 WL 3249586, at *4 (stating that a party

12  cannot "act like the proverbial ostrich, putting its head in the sand . . . only to declare it

13  should get a 'do-over' when it could not longer ignore the actions of its lawyer[.]").  The

14  record therefore supports a finding of culpability on the part of Mr. Maiden.

15       As to the Alger Defendants, the court previously entered default against them for

16  their failure to provide complete and adequate responses to several sets of Mr. Al-

17  Bustani's discovery requests.  (2/26/24 Order (Dkt. # 147); Default Entry (Dkt. # 148).)

18  To the extent the Alger Defendants argue that Mr. Hayton did not tell them about Mr. Al-

19  Bustani's discovery requests, the court is not persuaded.  Indeed, the uncontroverted

20  evidence shows that the Alger Defendants were aware of Mr. Al-Bustani's discovery

21  requests and were involved in responding to them.  (*See* Ford Decl. (Dkt. # 146) ¶ 3

22  (stating that instead of providing requested social media login information, Defendants

1  "suggest using a Password Manager to retrieve Defendants' communications about the

2  Twyman Works").)  In his motion seeking default judgment, Mr. Al-Bustani represented

3  that the Alger Defendants continued to fail to meaningfully participate in discovery.  (DJ

4  Mot. at 8, 9 n.4; *see id.* at 10 (arguing that Defendants "blatantl[y] fail[ed] to cooperate

5  with [Mr. Al-Bustani] in his efforts to litigate this matter").)  After concluding that the

6  Alger Defendants "defaulted as a result of their own culpable conduct, [and] not

7  excusable neglect[,]" the court held that the entry of default judgment against the Alger

8  Defendants was appropriate.  (6/28/24 Order at 16, 18-21.)

9      In the present motion, the Alger Defendants make no attempt to explain their

10  inadequate discovery responses, nor do they describe any attempt to communicate with

11  Mr. Hayton about their discovery leading up to the entry of default and default judgment.

12  (*See generally* Mot.; Reply; *see generally* Alger Decl. (no communications described

13  between January 2023 and July 22, 2024).)  Instead, the Alger Defendants appear to

14  argue that they were not aware of the default judgment order until December 2024.  (*See*

15  Reply at 2-3.)  As explained above, however, Mr. Maiden's and Mr. Alger's

16  communications with Mr. Hayton in July 2024 reveal that they *were at least* aware of the

17  judgment against them at that time.  (*See* Alger Decl. ¶ 6.)  Accordingly, the totality of

18  the record supports a finding that the Alger Defendants' conduct was culpable.[12]

19

20  [12] Defendants assert that default judgment should be set aside under *Bryan v. Butler*, 163
    F.R.D. 175 (N.D.N.Y. 1995) and *Adavco, Inc. v. Deertrail Dev. LLC*,

21  No. 1:23-cv-00695-JLT-SKO, 2025 WL 18856 (E.D. Cal. Jan. 2, 2025).  (Mot. at 5.)  *Bryan*,
    however, is an out-of-circuit case involving a defendant who believed that the insurance carrier

22  for her former employer would defend her in a malpractice suit concerning work that occurred

1    Based upon its review of the record, the court concludes that Defendants acted

2    sufficiently culpably in connection with the entry of default judgment.[13]

3    *b. Meritorious Defense*

4    Even if Defendants were not culpable, however, Rule 60(b)(1) is inappropriate

5    because they lack meritorious defenses.  To satisfy the "meritorious defense" factor, the

6    movant must "allege sufficient facts that, if true, would constitute a defense" to the

7    plaintiff's claim.  *Aguilar*, 782 F.3d at 1107.  Here, Defendants asserts that default

8    judgment should be set aside because (1) certain allegations in Mr. Al-Bustani's

9    operative complaint were "speculative" and fail to satisfy the requisite pleading

10   standards; (2) Defendants are protected from liability under the first sale doctrine; (3) Mr.

11   Alger has a viable defamation counterclaim; and (4) Mr. Maiden has a viable non-use

12   defense.  (Mot. at 7-10.)  The court addresses each of these arguments in turn.

13              i.   Alleged Pleading Issues

14   The court first addresses Defendants' pleading standard argument, which, in

15   Defendants' view, "provides an independent basis to set aside the default judgment."  (*Id.*

16   at 7.)  Specifically, Defendants assert that "salient allegations of liability" in Mr. Al-

17   Bustani's complaint "were based on 'information and belief'" and thus are too

18   _____

19   during her employment.  *Id.* at 177.  And *Adavco* involved the setting aside of the entry of
     default—not default judgment.  *Adavco*, 2025 WL 18856, at *2.  The court has greater discretion

20   in setting aside the entry of default than it does in setting aside default judgment and the "good
     cause" factors are applied more liberally.  *See id.* (citations omitted).  These cases therefore do
     not change the court's analysis.

21              [13] In their reply brief, Defendants separately argue that Mr. Hayton's conduct amounted
     to gross negligence warranting the setting aside of the entry of default judgment against them.

22   (*See* Reply at 2.)  The court addresses these allegations below in section III.C.2.

1    speculative to satisfy the plausibility pleading standards under Federal Rule of Civil

2    Procedure 8.  (*Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).)

3        The court is not persuaded.  Defendants do not cite any binding authority

4    supporting its argument that Mr. Al-Bustani's allegations "on information and belief" do

5    not satisfy the pleading standards of Rule 8.  The court in *Atlantic Recording*

6    *Corporation v. Brennan*, 534 F. Supp. 2d 278 (D. Conn. 2008), held that the plaintiffs'

7    allegations of copyright infringement based on "information and belief" were too

8    speculative to support the entry of default judgment because the "[p]laintiffs' allegations

9    of infringement lack[ed] any factual grounding whatsoever[.]"  *Id.* at 283.  Similarly, the

10   court in *Interscope Records v. Rodriguez*, No. 06CV2485-B (NLS), 2007 WL 2408484,

11   at *1 (S.D. Cal. Aug. 17, 2007), concluded that the plaintiff's allegations were too

12   speculative to warrant the entry of default judgment because the plaintiff presented "no

13   facts" other than their allegations "on information and belief" supporting its claim.  *See*

14   *id.*  Here, Defendants do not allege that Mr. Al-Bustani presented no facts in support of

15   his allegations.  (*See generally* Mot.; Reply.)

16       Importantly, under Ninth Circuit law, allegations made "on information and

17   belief" are sufficient to satisfy the Rule 8 pleading standard, "so long as the allegations

18   are accompanied by a statement of facts upon which the belief is founded."  *Nayab v.*

19   *Cap. One Bank (USA), N.A.*, 942 F.3d 480, 493 (9th Cir. 2019); *see id.* (stating that

20   allegations made "on information and belief" and accompanied by a statement of facts

21   satisfy "[e]ven [] the more rigid pleading standard of [Rule] 9").  Defendants do not

22   allege that Mr. Al-Bustani's operative complaint fails to plead any facts supporting his

allegations made "on information and belief." (*See generally* Mot; 2d Am. Compl.)

Indeed, Mr. Al-Bustani's allegations made "on information and belief" in his operative

complaint are supported with factual allegations. (*See, e.g.*, 2d Am. Compl. ¶¶ 29-32

(describing Mr. Alger's alleged copying and distribution of the copyrighted works), 33

(supporting allegations against Mr. Maiden with an example).)  Accordingly, the court is

not persuaded by this argument.

                ii.    <u>First Sale Defense</u>

        Defendants assert that setting aside the entry of default judgment is warranted

because they have a viable defense to Mr. Al-Bustani's copyright infringement claims

under the first sale doctrine, codified at 17 U.S.C. § 109(a).  (*See* Mot. at 7.)  Generally,

the owner of a registered copyright has the exclusive right to authorize or distribute

copies of a copyrighted work.  17 U.S.C. § 106(3).  Under the first sale doctrine,

however, a sale of a copy "lawfully made" under the Copyright Act terminates the

copyright holder's authority to interfere with subsequent sales or distribution of that

particular copy.  17 U.S.C. § 109(a); *Adobe Sys Inc. v. Christenson*, 809 F.3d 1071, 1076

(9th Cir. 2015).  Accordingly, section 109(a) provides a defense to liability under section

106(3) to lawful purchasers of copies of copyrighted materials, or to "any person

authorized" by such lawful purchaser.  *Id.*; *Quality King Distribs., Inc. v. L'anza*

*Research Int'l, Inc.*, 523 U.S. 135, 146-47 (1998) (characterizing the first sale doctrine as

a "defense").  To establish a defense under the first sale doctrine, the movant must be

able to show that:  "(1) the copy was lawfully manufactured with authorization of the

copyright owner; (2) the particular copy transferred under the copyright owner's

1    authority; (3) the defendant is the lawful owner of the particular copy; and (4) the

2    defendant did not dispose (e.g., duplicate) of the copy." *Gill v. Am. Mortg. Educators,*

3    *Inc.*, No. C07-5244RBL, 2007 WL 2746946, at *4 (W.D. Wash. Sept. 19, 2007) (citing 2

4    Melville B. Nimmer, *Nimmer on Copyright* § 8:12[B][1] (2007)).

5        "Without a sale, there can be no 'first sale'" defense. *See Vernor v. Autodesk,*

6    *Inc.*, 555 F. Supp. 2d 1164, 1168 (W.D. Wash. 2008). "[T]o claim the benefits of the first

7    sale defense, the holder of the copy must actually hold title." *Christenson*, 809 F.3d at

8    1076. "[O]nce a copy . . . has been lawfully sold (or its ownership otherwise lawfully

9    transferred), the buyer of that *copy* and subsequent owners are free to dispose of it as they

10   wish." *Close v. Sotheby's, Inc.*, 894 F.3d 1061, 1073 (9th Cir. 2018) (quoting *Kirtsaeng*

11   *v. John Wiley & Sons, Inc.*, 568 U.S. 519, 524 (2013) (emphasis in original)). Thus, "the

12   first sale doctrine [does] not provide a defense to . . . any nonowner such as a bailee, a

13   licensee, a consignee, or one whose possession of the copy was unlawful." *Quality*, 523

14   U.S. at 146-47.

15       Here, Defendants assert that they are entitled to claim the first sale defense

16   because the disputed copyrighted works "were made freely available by [Ms.] Twyman

17   to members of her subscription service ('Plus Ultra Club')," and "the Alger Defendants

18   purchased the works" "through lawful acquisition" and "later shared excerpts of the

19   same." (Mot. at 8; Reply at 9.) Defendants further assert that a "third-party created the

20   excerpts of [Ms.] Twyman's content to be shared on a password-protected Dropbox

21   folder" and that "[d]iscovery will reveal the nature and extent of [Ms.] Twyman's

22   permissions to redistribute or copy her work." (Reply at 9.) But these allegations,

1   accepted as true, *Aguilar*, 782 F.3d at 1107, do not constitute a first sale defense.  At a

2   minimum, Defendants have failed to allege any facts showing that there was a lawful sale

3   of Ms. Twyman's copyrighted works in the first instance, or that Defendants hold title the

4   purportedly lawful copies.  Nor have Defendants set forth any facts establishing each of

5   the four elements of the first sale defense.  *See Gill*, 2007 WL 2746946, at *4.

6   Accordingly, Defendants have not established a meritorious first sale defense.[14]

7               iii.   Mr. Alger's Defamation Counterclaim

8          Defendants also argue that setting aside default judgment as to Mr. Alger is

9   warranted because he has a viable defamation counterclaim against Mr. Al-Bustani.

10   (Mot. at 8-10.)  But the "meritorious defense" factor in a default judgment analysis

11   requires that the movant have a *defense to the plaintiff's claim*—not an independent

12   counterclaim.  *See Aguilar*, 782 F.3d at 1107.  Defendants have not provided—and the

13   court is not aware of—any cases holding that defamation is an affirmative defense to a

14   copyright infringement action.  *Cf. Guetzloe Grp., Inc. v. Mask,* No.

15   6:06-cv-404-Orl-22JGG, 2006 WL 8439575, at *1 (M.D. Fla. Nov. 28, 2006) (making

16   the same observation).  Accordingly, Mr. Alger's alleged defamation counterclaim, even

17   if properly asserted, does not warrant setting aside the default judgment entered against

18   him.

19

20          [14] Defendants argue for the first time in their reply brief that "[e]ven if . . . [Defendants'
    actions are] not technically considered within the first sale or fair use doctrines as initially plead
21   by prior counsel [citing Am. Answer (Dkt. # 66) at 3]," Defendants may nonetheless have a
    viable implied license defense.  (*See* Reply at 9.)  Because this argument is raised for the first
22   time on reply, the court does not address it.  *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007)
    ("[D]istrict court[s] need not consider arguments raised for the first time in a reply brief.").

1                     iv.    <u>Mr. Maiden's Non-Use Defense</u>

2         In the operative complaint, Mr. Al-Bustani alleges, in relevant part, that Mr.

3  Maiden, through the "RX Only Picture Show" podcast, was involved in the unauthorized

4  distribution and copying of Ms. Twyman's copyrighted works or derivatives thereof, and

5  seeks to hold him liable for direct copyright infringement.  (2d Am. Compl. ¶¶ 28-29, 62-

6  71; *see id.* ¶ 33 (also alleging that Mr. Maiden distributed infringing copies within a

7  Telegram channel platform).)  Mr. Maiden asserts that he has a viable "non-use" defense

8  warranting the setting aside of the entry of default judgment as to him with respect to this

9  claim.  (*See* Maiden Decl. ¶¶ 18-19; Mot. at 10-11.)  Specifically, he contends that he

10  "never made revenue from the podcast in dispute[,]" that he was "barely active on the

11  [RX Only Picture Show] Discord Server," and "rarely made posts[.]"  (*Id.* ¶¶ 18-19.)  He

12  further contends that he is "not the owner" of the disputed Telegram channel, and that he

13  "never had any administrative control on the content of the posts" and and "rarely

14  post[s]" on the Telegram channel.  (*Id.* ¶¶ 7, 18-19.)

15         For starters, it is not clear to the court that Mr. Maiden's alleged "non-use" is a

16  defense to Mr. Al-Bustani's copyright infringement claim.  *Cf. Attachmate Corp. v.*

17  *Health Net, Inc.*, No. C09-1161MJP, 2010 WL 4365833, at *7 (W.D. Wash. Oct. 26,

18  2010) ("[Defendant] has made no argument as to why its purported non-use of

19  [plaintiff's] products is a relevant defense to [plaintiff's] copyright claim.").[15]  Setting

20

21                                _____

[15] The court is aware of the "fair use" or "non-infringing use" defense to copyright

22  infringement claims under 17 U.S.C. § 107, but it does not appear that Mr. Maiden is asserting
that defense, nor has he alleged sufficient facts that would constitute that defense.

1  that aside for purposes of Defendants' motion, neither the extent of Mr. Maiden's control

2  over the "content of the posts" on the disputed platforms, nor the extent of the revenue

3  earned on those platforms, bears on question of whether he had any role in the

4  unauthorized copying or distribution of Ms. Twyman's copyrighted works in the first

5  instance.  Accordingly, Mr. Maiden's alleged "non-use" defense does not change the

6  court's analysis.

7    Because Defendants have not "alleged sufficient facts that, if true, would

8  constitute a defense" to Mr. Al-Bustani's claims against them, *Aguilar*, 782 F.3d at 1107,

9  the court concludes that the "meritorious defense" factor weighs in favor of maintaining

10  the entry of default judgment against Defendants.

11    Under the "good cause" factor test, a finding of either culpable conduct by the

12  defendant, the lack of a meritorious defense, or prejudice to the plaintiff justifies the

13  denial of the defendant's Rule 60(b)(1) motion.  *Cassidy*, 856 F.2d at 1415; *see also In re*

14  *Hammer,* 940 F.2d 524, 525-26 (9th Cir. 1991) (vacation of a default judgment is

15  inappropriate if "defendant's own culpable conduct prompted the default"); *Hawaii*

16  *Carpenters' Trust Funds v. Stone,* 794 F.2d 508, 513 (9th Cir. 1986) (it is an abuse of

17  discretion for a court to set aside a default judgment absent a showing of a possible

18  meritorious defense).  Because the court concludes that Defendants are both culpable and

19  have no meritorious defenses, the court need not decide whether Mr. Al-Bustani would

20  be prejudiced by setting aside the default judgment against Defendants.  *See Aguilar*, 782

21  F.2d at 1109.

22

1       2.  Rule 60(b)(6) Motion

2       For the first time in their reply brief, Defendants assert that default judgment

3 should be set aside because Mr. Hayton's conduct amounted to "gross negligence"

4 warranting relief under Rule 60(b)(6). (*See* Reply at 2 (citing *Cmty. Dental Servs. v.*

5 *Tani*, 282 F.3d 1164, 1169 (9th Cir. 2002)); *see generally* Mot.) The court is not required

6 to consider arguments for the first time in a reply brief. *Zamani*, 491 F.3d at 997; *see*

7 *also Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time

8 in the reply brief are waived."). Even if Defendants had properly raised this argument in

9 their opening brief, however, it would fail on the merits.

10       As noted above, Rule 60(b)(6) states that a default judgment may be set aside for

11 "any reason that justifies relief." Fed. R. Civ. P. 60(b)(6). In *Tani*, the Ninth Circuit held

12 that a default judgment "may" be set aside under Rule  60(b)(6) if the movant

13 demonstrates "gross negligence on the part of his counsel." *Tani*, 282 F.3d at 1169. To

14 justify relief under Rule 60(b)(6), the movant must demonstrate "extraordinary

15 circumstances which prevented or rendered him unable to prosecute [his] case." *Id.* at

16 1168 (internal quotation and citation omitted). More specifically, the movant must

17 "demonstrate both injury and circumstances beyond his control that prevented him from

18 proceeding with the prosecution or defense of the action in a proper fashion." *Id.*

19 (citation omitted). These principles are intended to protect the "unknowing[,]"

20 "faultless" client from liability for the gross negligence on the part of his or her counsel.

21 *Id.* at 1169.

22

Here, Defendants argue that this case mirrors *Tani* because Mr. Hayton "checked out" of the case and failed to inform them of the status of the case.  (Reply at 2.) Specifically, they contend that they had "no idea" about the default judgment and "thought the case was still active" when they retained new counsel in December 2024. (*Id.* at 2-3; *see also* Alger Decl. ¶ 11 (stating that Mr. Hayton did not inform Mr. Alger of the entry of default judgment when he spoke to Mr. Hayton in November 2024).) Defendants further contend that they "reasonably relied" on Mr. Hayton to "at least notify them of case developments."  (Reply at 3 (emphasis omitted).)  In Defendants' view, this conduct by Mr. Hayton amounts to gross negligence warranting relief under Rule 60(b)(6).

The court finds that Defendants have failed to demonstrate that Rule 60(b)(6) relief is appropriate here.  As explained, Defendants have produced evidence showing either a lack of follow up on their part or that they were aware that Mr. Hayton was not litigating their defense.  Specifically, Mr. Maiden represents that he discussed his improper service allegations with Mr. Hayton in February 2023, but he does not describe any attempts to inquire on the status of the case until May 2024, when Mr. Maiden "decided to call [Mr. Hayton]" because "he had not heard anything from [Mr. Hayton] in a long time."  (Maiden Decl. ¶¶ 7-8.)  At that time, Mr. Maiden learned that his Mr. Hayton had still not prepared the declaration that they had discussed in February 2023. (*See id.* ¶¶ 7-8 (describing communications from February 2023); *id.* ¶¶ 9-11 (describing communications from May 2024).)  And after Mr. Hayton prepared—and Mr. Maiden signed—the declaration on May 9, 2024, Mr. Maiden apparently did not follow up with

1    Mr. Hayton again until August 2024, where Mr. Hayton informed him that still had not

2    filed the declaration.  (*Id.* ¶¶ 12-13.)  As to the Alger Defendants, Mr. Alger represents

3    that he discussed Mr. Maiden's "status in the case" and "service of process" with Mr.

4    Hayton in December 2022 and January 2023, but does not describe any additional

5    attempts to follow up with counsel until July 2024.  (Alger Decl. ¶¶ 4-7.)

6        Despite their awareness that their then-counsel had not acted diligently,

7    Defendants continued to—in their words—"rel[y]" on him to defend their case.  (Reply

8    at 3; *see also* Maiden Decl. ¶ 14 (stating that several emails sent to Mr. Hayton between

9    August and November 2024 "went unanswered"); Alger Decl. ¶ 8 (same).)  Unlike *Tani*,

10   Mr. Hayton did not lie to Defendants about his progress on their case.  *See Tani*, 282 F.3d

11   at 1171 ("[counsel] explicitly represented to Tani that the case was proceeding

12   properly").  Indeed, Defendants represent that Mr. Hayton either admitted that he had not

13   completed work in their case or did not respond to their inquiries.  (Maiden Decl. Alger

14   Decl. ¶¶ 8, 11.)

15       Based on the totality of the record, the court cannot conclude that Defendants were

16   "unknowing" or "faultless" clients or that the entry of default judgment was due to

17   circumstances "beyond [their] control."  *See Tani*, 282 F.3d at 1168-69; *cf. Strategic*

18   *Partners*, 2019 WL 3249586, at *5 ("Defendants knew or should have known long ago

19   that its case was not being properly litigated."); *see also Killingham v. D.C. Ctr. for*

20   *Indep. Living, Inc.*, No. Civ.A. 89-2713JGP, 1998 WL 1148899, at *7 (D.D.C. Sept. 30,

21   1998), *aff'd*, 203 F.3d 52 (D.C. Cir. 1999) (holding that Rule 60(b)(6) relief was not

22   appropriate in part because movant failed to maintain communication with its counsel).

1    Importantly, as stated, the court does not credit Defendants' arguments were

2    unaware of the default judgment until December 2024.  (*See* Reply at 2-3.)  Indeed,

3    Defendants asked Mr. Hayton whether he was "intent on filing on [Defendants'] behalf in

4    such a way that th[e] [] judgment [would] be reversed" in July 2024—the same month the

5    court directed the Clerk to enter default judgment against them.  (Alger Decl. ¶ 6.)  In

6    light of Defendants' representations, and for the other reasons described above, the court

7    concludes that Rule 60(b)(6) relief is inappropriate in this case.

8                              v.    **CONCLUSION**

9    In light of the foregoing, Defendants' motion to set aside the entry of default

10   judgment is DENIED (Dkt. # 168).

11   Dated this <u>20th</u> day of June, 2025.

12

13                                        JAMES L. ROBART
                                          United States District Judge

14

15

16

17

18

19

20

21

22

ORDER - 27